**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| WAHL CLIPPER CORPORATION, | Case No. 3:25-cv-50406 |
| Plaintiff, | |
| v. | |
| STYLECRAFT, LLC and GAMMA+ NA, LLC, | |
| Defendants. | |

## ANSWER TO COMPLAINT

Defendants StyleCraft, LLC ("StyleCraft") and Gamma+ NA, LLC ("Gamma+," and together with StyleCraft, "Defendants") hereby answer the Complaint of Plaintiff Wahl Clipper Corporation ("Plaintiff") as follows:

## RESPONSE TO HEADINGS

The Complaint contains various headings. Because such headings are not set forth in numbered paragraphs, they are not properly pleaded facts that require a response. To the extent any headings contain factual allegations requiring a response, Defendants specifically deny the allegations set forth herein.

## NATURE OF THE ACTION

### COMPLAINT ¶1:

Wahl is an American manufacturer of professional and home grooming products that is headquartered in Sterling, Illinois. Wahl employs over 650 individuals in the United States, most of whom work and reside within the Northern District of Illinois.

### ANSWER:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and on that basis deny them.

**COMPLAINT ¶2:**

Since its founding in 1919, Wahl has been an innovator of professional and home grooming products. The company's founder, Leo J. Wahl, invented the very first electric clipper with a drive motor in the product's hand, and applied for over 100 patents during his lifetime. Today, Wahl employs over 50 product engineers and industrial designers in the United States who continue this proud legacy of innovation.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 2 and on that basis deny them.

**COMPLAINT ¶3:**

Defendant StyleCraft is a recent entrant to the market for professional grooming products, but it has rapidly gained market share. Founded in 2017, StyleCraft positions itself as an American-based company that designs and engineers its professional clippers and trimmers in the United States. StyleCraft acknowledges in some cases that its products are manufactured in China, but it claims without any qualification that products such as its Instinct X clipper and Saber trimmer were developed, designed, and/or engineered in the USA. StyleCraft's claims are powerful ones that appeal to American consumers' sense of pride in American ingenuity, and their desire to support domestic employers. They are, however, egregiously false.

**ANSWER:**

Defendants admit that StyleCraft was founded in 2017, is an American-based company

that designs, develops and engineers its professional clippers and trimmers in the United States,

works collaboratively with manufacturers based in China, discloses that its professional clippers

and trimmers are manufactured in China when required, and has gained market share in

professional clippers and trimmers since its founding. Defendants deny the remaining allegations

in Paragraph 3.

**COMPLAINT ¶4:**

Contrary to the clear and express message of its advertising claims, StyleCraft's products were not developed, designed, or engineered in the United States. Indeed, StyleCraft does not appear to even employ any product designers or engineers in the United States. Rather, StyleCraft's clippers and trimmers appear in most cases to be virtual carbon copies of Chinese clippers and trimmers that were first sold in China by a Chinese company known as Moreda under

its "MRD" brand. Moreda, in fact, owns numerous patents listing Chinese inventors that cover critical aspects of StyleCraft's clippers and trimmers.

**ANSWER:**

Defendants deny the allegations in Paragraph 4.

**COMPLAINT ¶5:**

StyleCraft's attempt to wrap its company and product portfolio within a halo of American innovation is deceiving consumers and causing them to pay a premium for products that were predominately, if not exclusively, developed, designed, and engineered in China.

**ANSWER:**

Defendants deny the allegations in Paragraph 5.

**COMPLAINT ¶6:**

StyleCraft and its corporate affiliate, Gamma+, are also misrepresenting the performance capabilities of their clippers and trimmers with false claims regarding their products' run time, charge time, and cutting capabilities—claiming in some cases that their products deliver four hours of cordless run time when, in fact, the products only deliver about half this.

**ANSWER:**

Defendants deny the allegations in Paragraph 6.

**COMPLAINT ¶7:**

Defendants' false claims are deceiving consumers and causing direct and immediate injury to Wahl in its own sale of professional clippers and trimmers. They must stop. Through this action, Wahl seeks an injunction preventing StyleCraft and Gamma+ from any further dissemination of their false claims, disgorgement of the profits that Defendants have wrongfully obtained as a result of their false claims, and an award of attorney's fees.

**ANSWER:**

Defendants deny the allegations in Paragraph 7 and deny that Plaintiff is entitled to any relief on its claims.

## PARTIES

**COMPLAINT ¶8:**

Wahl Clipper Corporation is an. Illinois corporation with its principal place of - business at 2900 North Locust St., Sterling, Illinois 61081.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and on that basis deny them.

**COMPLAINT ¶9:**

Defendant StyleCraft, LLC is a Florida Limited Liability Company with its principal place of business at 1120 South Rogers Circle, Boca Raton, FL 33487.

**ANSWER:**

Defendants admit the allegations in Paragraph 9.

**COMPLAINT ¶10:**

Defendant Gamma+ NA, LLC is a Florida Limited Liability Company with its principal place of business at 1120 South Rogers Circle, Boca Raton, FL 33487.

**ANSWER:**

Defendants admit the allegations in Paragraph 10.

**COMPLAINT ¶11:**

On information and belief, Gamma+ is a partnership between StyleCraft and Gamma Piu Italy. According to Gamma+'s website, Gamma+ is "under the StyleCraft corporate umbrella." In addition, StyleCraft's founder, Kenneth Russo, identifies himself on LinkedIn as the Chief Executive Officer of both StyleCraft and Gamma+, while his son, Austin Russo, identifies himself as a co-founder of both companies.

**ANSWER:**

The allegations in Paragraph 11 purport to refer to Gamma+'s website and LinkedIn which speak for themselves. To the extent the allegations in Paragraph 11 are inconsistent with the website or LinkedIn, Defendants deny such allegations. To the extent further response is required, Defendants admit only that they work collaboratively with Gamma Piu Italy and deny the remaining allegations in Paragraph 11.

## JURISDICTION

**COMPLAINT ¶12:**

This Court has subject matter jurisdiction over Wahl's claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367, as Wahl is asserting claims under the Lanham Act, 15 U.S.C. § 1051, et seq., and its state-law claims arise from the same operative facts.

**ANSWER:**

Paragraph 12 contains legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 12.

**COMPLAINT ¶13:**

The Court also has jurisdiction over this action under 28 U.S.C. § 1332 since the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

**ANSWER:**

Paragraph 13 contains legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 13.

**COMPLAINT ¶14:**

Defendants are subject to personal jurisdiction in this District as a result of their pervasive and ongoing contacts with the State of Illinois and this District. Defendants advertise and sell their products to barbers and stylists in this District through their website, through distributors, and through brick-and-mortar retailers such as CosmoProf. On information and belief, Defendants have also participated in trade shows in this District, and established an authorized service center for the repair and improvement of StyleCraft and Gamma+ products in this District.

**ANSWER:**

Paragraph 14 contains legal conclusions to which no response is required. Paragraph 14 also purports to refer to Defendants' website which speaks for itself. To the extent the allegations in Paragraph 14 are inconsistent with Defendants' website, Defendants deny such allegations. Defendants admit only that the products identified in the Complaint are available for purchase in the Chicago area online and the brick-and-mortar retailer CosmoProf, that StyleCraft has attended

trade shows in the Chicago area and has an authorized service center in the Chicago area. Defendants deny any remaining allegations in Paragraph 14.

**COMPLAINT ¶15:**

Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Wahl's claims occurred in this District.

**ANSWER:**

Paragraph 15 contains legal conclusions to which no response is required. Defendants deny all remaining allegations in Paragraph 15.

## FACTS COMMON TO ALL COUNTS

**COMPLAINT ¶16:**

Electric clippers and trimmers are essential tools for barbers and stylists in the United States and around the world. Not only do they expedite the hair cutting process by allowing for bulk hair removal, they facilitate the creation of various types of haircuts, from short styles to fades, and for detailing and refining hairlines and beards. For some barbers and stylists they are a finishing tool, but for many others, they are the primary tools of their trade craft that they continuously use throughout the day to cut and style hair. In the United States, it is estimated that professional barbers and stylists spend hundreds of millions of dollars on clippers and trimmers every year.

**ANSWER:**

Defendants admit that electric clippers and trimmers are essential tools for barbers and stylists. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 16 and on that basis deny them.

**COMPLAINT ¶17:**

Headquartered in Sterling, IL, Plaintiff Wahl has been in the business of designing and manufacturing hair clippers and trimmers for over 100 years. Since its inception in 1919, the company has been known for its ground-breaking technology and high quality products. Wahl's founder, Leo J. Wahl, invented and patented the first practical electric clipper with the drive motor in the product's hand, and this invention revolutionized the barbering industry by providing a faster, more efficient, and more precise way, to cut hair than the manual clippers that had prevailed prior to Wahl's invention. Within his lifetime, Leo J. Wahl applied for over 100 patents on his various inventions.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 17 and on that basis deny them.

**COMPLAINT ¶18:**

Wahl's corporate headquarters are in Sterling, IL, where it employs over 650 individuals across its 500,000+ square-foot campus. This includes over 50 product engineers and industrial designers who continue the company's proud history of innovation. Wahl created the very first battery-powered clipper and trimmer in the late 1960s, and it has been using lithium technology in its cordless clippers and trimmers since 2009. Lithium ion technology provides for more power with a longer charge time than ordinary batteries. Wahl's significant and ongoing investment in product engineering and design has resulted in a robust patent portfolio—the company currently holds over 175 granted US patents and pending patent applications.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 18 and on that basis deny them.

**COMPLAINT ¶19:**

In addition to its investment in product design and engineering, Wahl subjects all of its products to rigorous testing and quality control measures to ensure that they will meet the needs of the company's professional barber and stylist clients and perform as advertised in terms of run time, charge time, and product performance. And while much of Wahl's product development, design, and manufacturing occurs in the United States, it is careful to adhere to the Federal Trade Commission's standards for making "Made in USA" claims when making claims about its own products since it also owns and operates manufacturing facilities in Asia and Europe.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 19 and on that basis deny them.

**COMPLAINT ¶20:**

Defendants StyleCraft and Gamma+ compete with Wahl with respect to the sale of clippers and trimmers to professional barbers and stylists in this District and throughout the United States.

**ANSWER:**

Defendants admit that the clippers and trimmers are sold in the United States, including to professional barbers and stylists. Defendants are also aware that Wahl brand clippers and trimmers are available for sale to professional barbers and stylists in the United States. The remaining allegations are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 20.

**COMPLAINT ¶21:**

Founded in 2017, StyleCraft promotes itself as an American business, emphasizing its corporate headquarters in Florida. In a video on StyleCraft's website, filmed in and around StyleCraft's Florida headquarters, its founder states that StyleCraft has been recognized as the "number 2 fastest growing manufacturing company in the United States" (emphasis added). The voiceover appears while a single individual appears to be working on a product in a mailroom, leaving the impression that StyleCraft manufactures its products at its headquarters.

**ANSWER:**

Defendants admit that StyleCraft was founded in 2017, is an American business, and is headquartered in Florida. The remaining allegations in Paragraph 21 purport to describe a video on StyleCraft's website which speaks for itself. To the extent the allegations in Paragraph 21 are inconsistent with the video, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 21.

**COMPLAINT ¶22:**

Gamma+ similarly promotes itself on its website as "one of the fastest growing beauty and grooming brands in the country. We are family-owned and US based..." This text appears under a video showing people manufacturing Gamma+ products, leaving the impression that those individuals are located in the United States.

**ANSWER:**

The allegations in Paragraph 22 purport to refer to the Gamma+ website which speaks for itself. To the extent the allegations in Paragraph 22 are inconsistent with the Gamma+ website, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 22.

**COMPLAINT ¶23:**

One of Defendants' founders has claimed that the company's "point of difference is our technology, innovation and product development. We have so many ideas that have never been executed before." Defendants' founder has also stated that StyleCraft releases "new products at a fast pace. And not just new colors, but new designs, molds and. technologies." StyleCraft widely advertises that its products are developed, designed, and engineered in the United States without any qualification or limitation.

**ANSWER:**

The allegations in Paragraph 23 purport to refer to statements and advertisements made by

Defendants' founders which speak for themselves. To the extent the allegations in Paragraph 23

are inconsistent with statements by Defendants' founders and Defendants' advertisements,

Defendants deny such allegations. Defendants deny the remaining allegations in Paragraph 23.

**COMPLAINT ¶24:**

Defendants' purported development of their own products is also emphasized on the Gamma+ webpage: "The GAMMA+ brand is defined by our aspiration to design and engineer the most innovative, high-quality grooming and beauty tools, through, detailed collaboration between USA and Italy...Our innovative technologies and drive to continually make products that out-perform others have pushed us to the forefront of the industry."

**ANSWER:**

The allegations in Paragraph 24 purport to refer to the Gamma+ website which speaks for

itself. To the extent the allegations in Paragraph 24 are inconsistent with the Gamma+ website,

Defendants deny such allegations. Defendants deny the remaining allegations in Paragraph 24.

**COMPLAINT ¶25:**

The speed with which Defendants are able to create and launch new products is surprising given the companies' relatively small size. Upon information and belief, and as depicted on Defendants' websites, Defendants collectively employ around 50 individuals, none of whom are engineers. Rather, on information and belief, most of Defendants' employees are dedicated to marketing and selling their products rather than product design or engineering.

**ANSWER:**

The allegations in Paragraph 25 purport to refer to websites which speak for themselves. To the extent the allegations in Paragraph 25 are inconsistent with the websites, Defendants deny such allegations. Defendants deny the remaining allegations in Paragraph 25.

**COMPLAINT ¶26:**

Rather than design, engineer, or manufacture their own products, Defendants, on information and belief, have outsourced these responsibilities to a Chinese developer and manufacturer, Guangdong Huida Electric Appliance Co. Ltd, which is popularly known as Moreda ("Moreda"). Upon information and belief, Defendants have Moreda design, engineer, and manufacture their products—many of which Moreda has already produced and sold under its own brand, "MRD"—before placing their own labels on them. On information and belief, Defendants then greatly mark up these Chinese-designed and manufactured products before selling them in the United States.

**ANSWER:**

Defendants admit only that StyleCraft works collaboratively with Moreda. Defendants deny the remaining allegations in Paragraph 26.

**COMPLAINT ¶27:**

The speed with which Defendants' products come to market also foreclose rigorous product testing with the result being that Defendants' products are of inferior quality to Wahl's rigorously tested clippers and trimmers.

**ANSWER:**

Defendants deny the allegations in Paragraph 27.

**COMPLAINT ¶28:**

Defendants have also become known in the barber industry for the limited lifespan of their products.

**ANSWER:**

Defendants deny the allegations in Paragraph 28.

## DEFENDANTS' FALSE DEVELOPMENT AND DESIGN CLAIMS

**COMPLAINT ¶29:**

On information and belief, StyleCraft's professional clippers and trimmers are all manufactured in China by Moreda or other Chinese manufacturers. StyleCraft acknowledges in some cases that its products are manufactured in China, as it is legally obligated to do. But while StyleCraft sometimes acknowledges where its products are manufactured, it misleads consumers regarding the products' development, engineering, and design.

**ANSWER:**

Defendants admit that StyleCraft partners with manufacturers in China, including Moreda, and that on every product sold under the StyleCraft and Gamma+ brand it explicitly indicates where the products were manufactured. Defendants deny the remaining allegations in Paragraph 29.

**COMPLAINT ¶30:**

StyleCraft claims its clippers and trimmers were "engineered and designed in the USA" and/or "Developed in [the] USA" without any qualification or limitation. StyleCraft makes these claims online in its product descriptions, and it also prominently features these claims on its products' packaging where the claims are presented in conjunction with an American flag. For many products, StyleCraft dedicates one whole panel of its product packaging to the claim that the product was "Developed in USA," making it the most prominent claim on the products' packaging.

**ANSWER:**

The allegations in Paragraph 30 purport to refer to advertising and packaging of StyleCraft clippers, which speak for themselves. To the extent the allegations in Paragraph 30 are inconsistent with the advertising and packaging, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 30.

**COMPLAINT ¶31:**

StyleCraft's claims that its products are developed, designed, or engineered in the United States are highly resonant with American consumers who value American innovations and the United States-based companies who foster and support such innovations through their employment of American product designers and engineers. These claims not only provide a strong reason for barbers and stylists to choose StyleCraft products over competitive alternatives from Wahl and others that do not feature such claims, they also provide a justification for barbers and stylists to pay a premium for StyleCraft's American-designed and engineered products.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to what is "highly resonant" with American consumers and on that basis denies those allegations. Defendants also lack knowledge or information sufficient to form a belief as to whether the language from the alleged marketing materials and product packaging is a "strong reason" why barbers and stylists choose the products and on that basis denies those allegations. Defendants deny the remaining allegations in Paragraph 31.

**COMPLAINT ¶32:**

But StyleCraft's claims are not true. StyleCraft's clippers or trimmers were not developed, designed, or engineered in the Unted States. Many of StyleCraft's products are virtually identical to products previously released by the Chinese company, Moreda, in China under its MRD brand. In addition, many of StyleCraft's products are covered by Chinese design and utility patents held by Moreda and with no discernable connection to StyleCraft, or any StyleCraft engineer. Indeed, StyleCraft, on information and belief, does not employ any engineers or hold any patents in the United States covering any aspect of its products' design or engineering.

**ANSWER:**

Defendants deny the allegations in Paragraph 32.

**A.    StyleCraft's Instinct X Clipper**

**COMPLAINT ¶33:**

StyleCraft, on information and belief, released its Instinct X Clipper in the United States in or around December 2023. As reflected in Image 1, StyleCraft claims without qualification on the packaging for this clipper that it was "Developed in USA":

**ANSWER:**

The allegations in Paragraph 33 purports to refer to product packaging which speaks for itself. To the extent the allegations in Paragraph 33 are inconsistent with the product packaging, Defendants deny such allegations. Defendants admit that StyleCraft released the product referenced in Paragraph 33 in or around December 2023. Defendants deny the remaining allegations in Paragraph 33.

**COMPLAINT ¶34:**

Contrary to StyleCraft's claims, the StyleCraft Instinct X clipper appears identical to the MRD HC-999A clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 34.

**COMPLAINT ¶35:**

The Instinct X clipper also appears to be covered by Chinese design patents held by Moreda (CN307190982S; CN307684743S). The patents do not list any U.S. based inventors or assignees and have priority dates of December 16, 2021 and July 27, 2022, respectively. The clipper also appears to be covered by a Chinese utility patent (CN216490163U) which sets forth a priority date of December 16, 2021 and does not list any U.S. based inventors or assignees.

**ANSWER:**

The allegations in Paragraph 35 purport to refer to design patents and a utility patent which speak for themselves. To the extent the allegations in Paragraph 35 are inconsistent with the patents, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 35.

**COMPLAINT ¶36:**

Given the above, it is false and misleading for StyleCraft to claim its Instinct X clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Instinct X clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft works collaboratively with Moreda. Defendants deny the remaining allegations in Paragraph 36.

B.      **StyleCraft's Instinct Clipper**

**COMPLAINT ¶37:**

StyleCraft, on information and belief, released its Instinct clipper in the United States in or around December 2022. As reflected in Image 2, StyleCraft claims without qualification on the packaging for this clipper that it was "Developed in USA":

**ANSWER:**

Defendants admit that StyleCraft released the Instinct clipper in the United States in or

around December 2022. Defendants deny the remaining allegations in Paragraph 37.

**COMPLAINT ¶38:**

Contrary to StyleCraft's claims, the StyleCraft Instinct clipper appears identical to the MRD HC-999 clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 38.

**COMPLAINT ¶39:**

The Instinct clipper also appears to be covered by Chinese design patents (CN307483659S; CN307190982S) and a utility patent (CN216490163U) held by Moreda. The patents do not list any U.S. based inventors or assignees and have priority dates between December 16, 2021 and April 26, 2022.

**ANSWER:**

The allegations in Paragraph 39 purport to refer to design patents and a utility patent which

speak for themselves. To the extent the allegations in Paragraph 39 are inconsistent with the design

patents or utility patent, Defendants deny such allegations. Defendants deny any remaining

allegations in Paragraph 39.

**COMPLAINT ¶40:**

Given the above, it is false and misleading for StyleCraft to claim its Instinct clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Instinct clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft works collaboratively with Moreda. Defendants deny the remaining allegations in Paragraph 40.

      **C.**    **StyleCraft's Saber Trimmer**

**COMPLAINT ¶41:**

StyleCraft, on information and belief, released its Saber trimmer in the United States in September 2022. As reflected in Image 3, StyleCraft claims without qualification on the packaging for this trimmer states that the trimmer was "Developed in USA":

StyleCraft also claims without qualification on the product webpage for the trimmer that it was "Engineered and designed in the USA."

**ANSWER:**

Defendants admit that StyleCraft released the Saber trimmer in the United States in or around September 2022. The remaining allegations in Paragraph 41 purport to refer to product packaging which speaks for itself. To the extent the allegations in Paragraph 41 are inconsistent with the product packaging, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 41.

**COMPLAINT ¶42:**

Contrary to StyleCraft's claims, the StyleCraft Saber trimmer appears identical to the MRD SmartBrain trimmer manufactured and sold by the. Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the trimmer in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 42.

**COMPLAINT ¶43:**

The Saber trimmer also appears to be covered by a Chinese design patent held by Moreda (CN307760042S). The patent does not list any U.S. based inventors or assignees and has a priority date of September 5, 2022.

**ANSWER:**

The allegations in Paragraph 43 purport to refer to a design patent which speaks for itself. To the extent the allegations in Paragraph 43 are inconsistent with the design patent, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 43.

**COMPLAINT ¶44:**

Given the above, it is false and misleading for StyleCraft to claim its Saber trimmer was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Saber trimmer was conceived, designed, and engineered- in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft works collaboratively with Moreda. Defendants deny the remaining allegations in Paragraph 44.

      **D.**    **StyleCraft's Saber II Clipper**

**COMPLAINT ¶45:**

StyleCraft, on information and belief, released its Saber II clipper in the United States in October 2024. As reflected in Image 4, StyleCraft claims without qualification on the packaging for this clipper that the clipper was "Developed in USA":

**ANSWER:**

The allegations in Paragraph 45 purport to refer to product packaging which speaks for itself. To the extent the allegations in Paragraph 45 are inconsistent with the product packaging, Defendants deny such allegations. Defendants admit that StyleCraft released the Saber II clipper in the United States in or around October 2024, and deny the remaining allegations in Paragraph 45.

**COMPLAINT ¶46:**

Contrary to StyleCraft's claims, the StyleCraft Saber II clipper appears identical to the MRD SmartBrain clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 46.

**COMPLAINT ¶47:**

The Saber II clipper also appears to be covered by a Chinese design patent held by Moreda (CN308579571S). The patent does not list any U.S. based inventors or assignees and has a priority date of September 14, 2023.

**ANSWER:**

The allegations in Paragraph 47 purport to refer to a design patent which speaks for itself.

To the extent the allegations in Paragraph 47 are inconsistent with the patent, Defendants deny

such allegations. Defendants deny any remaining allegations in Paragraph 47.

**COMPLAINT ¶48:**

Given the above, it is false and misleading for StyleCraft to claim its Saber II clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Saber II clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft works collaboratively with Moreda. Defendants deny the

remaining allegations in Paragraph 48.

**E.    StyleCraft's Instinct Trimmer**

**COMPLAINT ¶49:**

StyleCraft, on information and belief, released its Instinct trimmer in the United States in or around January 2023. As reflected in Image 5, StyleCraft claims without qualification on the packaging for this clipper that the clipper was "Developed in USA":

StyleCraft also claims without qualification on the website for this clipper that it was "Engineered and designed in the USA."

**ANSWER:**

The allegations in Paragraph 49 purport to refer to product packaging which speaks for

itself. To the extent the allegations in Paragraph 49 are inconsistent with the product packaging,

Defendants deny such allegations. Defendants admit that StyleCraft released the Instinct trimmer

in the United States in or around January 2023, and deny any remaining allegations.

**COMPLAINT ¶50:**

Contrary to StyleCraft's claims, the StyleCraft Instinct trimmer appears identical to the MRD GMT-999 trimmer manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 50.

**COMPLAINT ¶51:**

The Instinct trimmer also appears to be covered by Chinese design patent (CN307483657S) held by Moreda. The patent does not list any U.S. based inventors or assignees and has a priority date of April 26, 2022.

**ANSWER:**

The allegations in Paragraph 51 purport to refer to a design patent which speaks for itself.

To the extent the allegations in Paragraph 51 are inconsistent with the patent, Defendants deny

such allegations. Defendants deny any remaining allegations in Paragraph 51.

**COMPLAINT ¶52:**

Given the above, it is false and misleading for StyleCraft to claim its Instinct trimmer was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Instinct trimmer was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft works collaboratively with Moreda. Defendants deny the

remaining allegations in Paragraph 52.

F.      **StyleCraft's Rogue Clipper**

**COMPLAINT ¶53:**

StyleCraft, on information and belief, released its Rogue clipper in the United States in or around April 2021. StyleCraft claims without qualification on the website for this clipper that it was "Engineered and designed in the USA."

**ANSWER:**

The allegations in Paragraph 53 purport to refer to StyleCraft's website which speaks for itself. To the extent the allegations in Paragraph 53 are inconsistent with StyleCraft's website, Defendants deny such allegations. Defendants admit that StyleCraft released the Rogue clipper in the United States in or around April 2021, and deny any remaining allegations in Paragraph 53.

**COMPLAINT ¶54:**

Contrary to StyleCraft's claims, the StyleCraft Rogue clipper appears identical to the MRD HC-90 clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 54.

**COMPLAINT ¶55:**

The Rogue clipper also appears to incorporate several different Chinese and Hong Kong patents that are either pending or issued to Moreda (CN305562940S; CN108621209A; HK30001595A), none of which list any U.S. based inventors or assignees and each of which have priority dates pre-dating StyleCraft's release of the Rogue clipper which was released in or around April 2021.

**ANSWER:**

The allegations in Paragraph 55 purport to refer to multiple pending or issued patents which speak for themselves. To the extent the allegations in Paragraph 55 are inconsistent with the patents, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 55.

**COMPLAINT ¶56:**

Given the above, it is false and misleading for StyleCraft to claim its Rogue clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Rogue clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft works collaboratively with Moreda. Defendants deny the

remaining allegations in Paragraph 56.

###### G.    StyleCraft's Ergo Clipper

**COMPLAINT ¶57:**

StyleCraft, on information and belief, released its Ergo clipper in the United States in or around July 2020. StyleCraft claims without qualification on the website for this clipper that it was "Engineered and designed in the USA," and these claims are also included,on the Amazon webpage for this clipper.

**ANSWER:**

The allegations in Paragraph 57 purport to refer to StyleCraft's website which speaks for

itself.  To the extent the allegations in Paragraph 57 are inconsistent with the website, Defendants

deny such allegations.  Defendants admit that StyleCraft released its Ergo clipper in the United

States in or around July 2020, and deny any remaining allegations in Paragraph 57.

**COMPLAINT ¶58:**

Contrary to StyleCraft's claims, the Ergo Clipper appears identical to the MRD HC-90 clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

**ANSWER:**

Defendants deny the allegations in Paragraph 58.

**COMPLAINT ¶59:**

Notably, the clipper offered by Gamma+ under the Ergo name (upon information and belief, offered for sale outside of the United States), looks nearly identical to the StyleCraft Ergo and MRD HC-90 but does not tout any U.S. connection.

**ANSWER:**

The allegations in Paragraph 59 purport to refer to photographs of clippers which speak for themselves. To the extent the photographs do not accurately represent the clippers, Defendants deny the allegations. Defendants deny any remaining allegations in Paragraph 59.

**COMPLAINT ¶60:**

The Ergo clipper also appears to incorporate a motor design covered by a Chinese utility patent application (CN108621209A) and Hong Kong utility patent held by Moreda (HK30001595A). The patents do not list any U.S. based inventors or assignees and have priority dates from years before StyleCraft's release of the Ergo clipper in or around July 2020.

**ANSWER:**

The allegations in Paragraph 60 purport to refer to a utility patent application and a utility patent which speak for themselves. To the extent the allegations in Paragraph 60 are inconsistent with the utility patent application and utility patent, Defendants deny such allegations. Defendants deny any remaining allegations in Paragraph 60.

**COMPLAINT ¶61:**

Given the above, it is false and misleading for StyleCraft to claim its Ergo clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Ergo clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**ANSWER:**

Defendants admit that StyleCraft personnel based in the United States work collaboratively with Moreda. Defendants deny the remaining allegations in Paragraph 61.

**DEFENDANTS' FALSE PRODUCT PERFORMANCE CLAIMS**

**COMPLAINT ¶62:**

In addition to these false and misleading product development and design claims, Defendants are also misrepresenting the performance capabilities of their clippers and trimmers with false claims regarding their run time, charge time, and cutting capabilities.

**ANSWER:**

Defendants deny the allegations in Paragraph 62.

**COMPLAINT ¶63:**

Cordless, battery-powered clippers and trimmers come with great benefits for professional barbers and stylists. Because they do not have to be connected to a power outlet by a cord, barbers and stylists can cut hair anywhere and maneuver more freely around their clients. They are, however, limited by their battery life. The longer a cordless clipper or trimmer can run on a single charge, the longer a barber or stylist is able to perform their services without needing to take a break to charge their tools, or to rotate in another costly appliance. And the faster the battery charges, the more use a professional barber or stylist can get out of the device.

**ANSWER:**

The allegations in Paragraph 63 are not directed toward Defendants, and therefore no response is required. Defendants deny any remaining allegations in Paragraph 63.

**COMPLAINT ¶64:**

Accordingly, claims pertaining to run time and charge time are highly material considerations to a haircare professional's decision to purchase a cordless clipper or trimmer. They also serve as points of comparison when choosing between clippers and trimmers. Simply put, a clipper or trimmer with a longer claimed run time and shorter claimed charge time will have an advantage over a competitor product that has a shorter claimed run time and longer claimed charge time. Defendants, on information and belief, were specifically aware of this competitive advantage in determining what run and charge times to identify on their product packaging and in online advertisements for their products.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to what drives a hypothetical individual haircare professional's decision-making and on that basis denies those allegations. The allegations in Paragraph 64 purport to refer to product packaging and online advertisements which speak for themselves. To the extent the allegations are inconsistent with the packaging and online advertisements, Defendants deny the allegations. Defendants deny the remaining allegations in Paragraph 64.

**COMPLAINT ¶65:**

StyleCraft, for example, introduced its Instinct X clipper with claims that the clipper delivers 4 hours of run time based on a 2-hour charge time. These claims appeared on the product's packaging and StyleCraft's website, and were widely disseminated online and through social media. These claims are false. Third party testing commissioned by Wahl reveals that the Instinct

22

X only delivers around 164 minutes of run time and takes over 3 hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

**ANSWER:**

The allegations in Paragraph 65 purport to refer to product packaging, StyleCraft's website, and social media which speak for themselves. To the extent the allegations in Paragraph 65 are inconsistent with the product packaging, StyleCraft's website, and social media, Defendants deny such allegations. Defendants lack knowledge or information sufficient to form a belief as to the results of supposed third party testing commissioned by Plaintiff and on that basis deny those allegations. Defendants deny the remaining allegations in Paragraph 65.

**COMPLAINT ¶66:**

StyleCraft likewise claims on its Saber trimmer product page that the Saber's "LITHIUM-ION BATTERY" delivers 3 hours of cordless run-time" which "is a game changer in the shop, salon, at home and on the go." Elsewhere on the product page, StyleCraft inflates the claim to "4 hour cordless run-time lithium-ion battery," which is also made on the product packaging, the Amazon product page, and in StyleCraft's social media promotion for the product. StyleCraft claims on the product packaging that the charge-time for the Saber trimmer, stating on the product packaging that it can charge in 90 minutes. These claims are false. Third party testing commissioned by Wahl reveals that the Saber trimmer only delivers around 157 minutes of run time and takes over 2 hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

**ANSWER:**

The allegations in Paragraph 66 purport to refer to product webpages, product packaging, and social media which speak for themselves. To the extent the allegations in Paragraph 66 are inconsistent with the product webpages, product packaging, or social media, Defendants deny such allegations. Defendants lack knowledge or information sufficient to form a belief as to the results of supposed third party testing commissioned by Plaintiff and on that basis deny those allegations. Defendants deny the remaining allegations in Paragraph 66.

**COMPLAINT ¶67:**

StyleCraft promotes its Saber II clipper on the StyleCraft product webpage as having a "LITHIUM-ION battery deliver[ing] 2.5 hours of cordless run-time from 120 minutes of charge" which gives a barber "the freedom to style without interruptions." The charge-time and battery life claims are repeated on the product packaging. StyleCraft also repeats its battery life claims on the Saber II Amazon product page and in StyleCraft's social media promotion for the product. These claims are false. Third party testing commissioned by Wahl reveals that the Saber II clipper only delivers around 135 minutes of run time and takes about 3 and a half hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

**ANSWER:**

The allegations in Paragraph 67 purport to refer to product webpages and product packaging which speak for themselves. To the extent the allegations in Paragraph 67 are inconsistent with the product webpages or product packaging, Defendants deny such allegations. Defendants lack knowledge or information sufficient to form a belief as to the results of supposed third party testing commissioned by Plaintiff and on that basis deny those allegations. Defendants deny the remaining allegations in Paragraph 67.

**COMPLAINT ¶68:**

On its website, StyleCraft claims its Rebel clipper's "LITHIUM-ION BATTERY delivers a leading 3 hours of cordless run-time with a 1-hour rapid charge." StyleCraft repeats these claims on the product's packaging and the product's Amazon page. These claims are false. Third party testing commissioned by Wahl reveals that the Rebel clipper only delivers around 128 minutes of run time and takes about 2 and a half hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

**ANSWER:**

The allegations in Paragraph 68 purport to refer to StyleCraft's website, product packaging, and a product webpage which speak for themselves. To the extent the allegations in Paragraph 68 are inconsistent with StyleCraft's website, product packaging, or the product webpage, Defendants deny such allegations. Defendants lack knowledge or information sufficient to form a belief as to

the results of supposed third party testing commissioned by Plaintiff and on that basis deny those

allegations.  Defendants deny the remaining allegations in Paragraph 68.

**COMPLAINT ¶69:**

On its webpage for its X-Ergo clipper, Gamma+ states the clipper has a "120 minute cordless runtime and 105 minute re-charge." Gamma+'s Amazon page for the X-Ergo likewise states that the "LITHIUM-ION BATTERY delivers an [sic] 2 hours of cordless run-time with a 105-minute rapid charge." These claims are false. Third party testing commissioned by Wahl reveals that the X-Ergo clipper only delivers around 84 minutes of run time takes over 105 minutes to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

**ANSWER:**

The allegations in Paragraph 69 purport to refer to the Gamma+ website and a product

webpage which speak for themselves.  To the extent the allegations in Paragraph 69 are

inconsistent with the Gamma+ website or the product webpage, Defendants deny such allegations.

Defendants lack knowledge or information sufficient to form a belief as to the results of supposed

third party testing commissioned by Plaintiff and on that basis denies those allegations.

Defendants deny the remaining allegations in Paragraph 69.

**COMPLAINT ¶70:**

In addition to these false run and charge time claims, Gamma+ also makes false claims regarding the cutting capabilities of its X-Ergo clipper. Gamma+ emphasizes the cutting edge nature of its "9V Microchipped Motor" and that the "turbocharged long-life magnetic motor runs at 10,000 strokes per minute, not only offering the ultimate in speed, power, and longevity but the quietest performance of any professional clipper." Elsewhere on the page, Gamma+ states that "Operating at lightning speed the X-Ergo runs at 10,000 strokes per minute, fine tuned for maximum' power." Gamma+ repeats its claims that the X-Ergo can run at 10,000 "SPM" (i.e., strokes per minute) on its Amazon product page and social media.

**ANSWER:**

The allegations in Paragraph 70 purport to refer to product webpages and social media

which speak for themselves.  To the extent the allegations in Paragraph 70 are inconsistent with

Gamma+'s webpages or social media, Defendants deny such allegations. Defendants deny the remaining allegations in Paragraph 70.

## COMPLAINT ¶71:

Gamma+'s claims are false. Third party testing commissioned by Wahl reveals that the X-Ergo only delivers around 9,000 SPM. Further exploration of the product has also revealed that the microchip in the X-Ergo is set to only allow maximum performance of 9,000 SPM. Accordingly, the X-Ergo cannot, as a technical matter, operate at 10,000 "SPM."

## ANSWER:

Defendants lack knowledge or information sufficient to form a belief as to the results of supposed third party testing commissioned by Plaintiff and on that basis deny those allegations. Defendants deny the remaining allegations in Paragraph 71.

## INJURY TO WAHL AND THE PUBLIC

## COMPLAINT ¶72:

Defendants' false claims about their products' development, design, and performance, individually and collectively, are deceiving professional consumers into mistakenly believing that Defendants' products possess qualities and performance attributes that they lack.

## ANSWER:

Defendants deny the allegations in Paragraph 72.

## COMPLAINT ¶73:

Defendants' false claims about their products' development, design, and performance, individually and collectively, are likely to cause professional consumers to purchase more of Defendants' clippers and trimmers, and to pay a higher price for these clippers and trimmers, than would otherwise be the case. On information and belief, Defendants are profiting financially from their false and misleading advertising claims through the sale of more products than they otherwise would have, and from their ability to charge higher prices for these products.

## ANSWER:

Defendants deny the allegations in Paragraph 73.

## COMPLAINT ¶74:

Defendants' false and misleading claims about their products' development, design, and performance, individually and collectively, have harmed Wahl and lured business to Defendants'

products at Wahl's expense. In addition, Defendants' false performance claims have caused professional barbers and stylists to question Wahl's technology and why Wahl's products do not deliver the same amount of run time as Defendants' products purportedly do.

**ANSWER:**

Defendants deny the allegations in Paragraph 74.

**COMPLAINT ¶75:**

On information and belief, Defendants knew or should have known that their advertising claims are false and misleading, and thus acted knowingly, willfully, in reckless disregard of the truth, and in bad faith.

**ANSWER:**

The allegations in Paragraph 75 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 75.

## COUNT I: FALSE ADVERTISING
## (15 U.S.C. § 1125(a)(1)(B))

**COMPLAINT ¶76:**

Wahl repeats and realleges the allegations in paragraphs 1 through 75 as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their responses to all preceding paragraphs above.

**COMPLAINT ¶77:**

Defendants have made false, deceptive, and misleading descriptions and representations of fact in its commercial advertising concerning the nature, characteristics, and qualities of their goods in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**ANSWER:**

The allegations in Paragraph 77 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 77.

**COMPLAINT ¶78:**

Defendants' false, deceptive, and misleading descriptions and representations of fact have deceived and are likely to deceive professional barbers.

**ANSWER:**

The allegations in Paragraph 78 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 78.

**COMPLAINT ¶79:**

Defendants' false, deceptive, and misleading descriptions and representations are material in that they influence the decision of professional barbers to purchase Defendants' products instead of those from Wahl, unfairly and unlawfully shifting income and profit from Wahl to Defendants.

**ANSWER:**

The allegations in Paragraph 79 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 79.

**COMPLAINT ¶80:**

Defendants' conduct is willful, deliberate, intentional, and in bad faith.

**ANSWER:**

The allegations in Paragraph 80 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 80.

**COMPLAINT ¶81:**

Defendants' false, deceptive, and misleading statements about their own goods have damaged Wahl's goodwill and reputation and have and are likely to continue to impact Wahl's sales in an amount to be determined at trial.

**ANSWER:**

The allegations in Paragraph 81 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 81.

**COMPLAINT ¶82:**

By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

**ANSWER:**

The allegations in Paragraph 82 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 82 and deny Plaintiff is entitled to any

remedy in law or equity.

## COUNT II: VIOLATION OF ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT
## (815 ILCS 505/2 *et. seq.*)

**COMPLAINT ¶83:**

Wahl repeats and realleges the allegations in paragraphs 1 through 82 as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their responses to all proceeding paragraphs above.

**COMPLAINT ¶84:**

Defendants have engaged in the foregoing unfair and deceptive acts and practices, in commerce, with the intent to cause the public to rely on, and with the effect that the consuming public has relied on, Defendants' false and misleading misrepresentations.

**ANSWER:**

The allegations in Paragraph 84 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 84.

**COMPLAINT ¶85:**

Defendants' false, deceptive, and misleading descriptions and representations have deceived and are likely to deceive purchasers and consumers into purchasing goods from Defendants instead of Wahl, unfairly and unlawfully shifting income and profit from Wahl to Defendants.

**ANSWER:**

The allegations in Paragraph 85 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 85.

**COMPLAINT ¶86:**

Defendants' foregoing acts constitute deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 et. seq.

**ANSWER:**

The allegations in Paragraph 86 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 86.

**COMPLAINT ¶87:**

Defendants' conduct is willful, deliberate, intentional, and in bad faith.

**ANSWER:**

The allegations in Paragraph 87 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 87.

**COMPLAINT ¶88:**

Wahl has been and will likely continue to be damaged by Defendants' false and misleading representations in an amount to be determined at trial.

**ANSWER:**

The allegations in Paragraph 88 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 88.

**COMPLAINT ¶89:**

By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

**ANSWER:**

The allegations in Paragraph 89 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 89 and deny Plaintiff is entitled to any remedy in law or equity.

## COUNT III: VIOLATION OF ILLINOIS
## UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS 510/2 *et. seq.*)

**COMPLAINT ¶90:**

Wahl repeats and realleges the allegations in paragraphs 1 through 89 as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their responses to all proceeding paragraphs above.

**COMPLAINT ¶91:**

StyleCraft has deployed false, deceptive, and misleading representations or designations of geographic origin in connection with its goods.

**ANSWER:**

The allegations in Paragraph 91 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 91.

**COMPLAINT ¶92:**

Defendants have also falsely and deceptively claimed their goods are, of a particular quality when they are not.

**ANSWER:**

The allegations in Paragraph 92 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 92.

**COMPLAINT ¶93:**

Defendants' statements as to quality of their goods and StyleCraft's statements as to its products' origins are likely to deceive.

**ANSWER:**

The allegations in Paragraph 93 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 93.

**COMPLAINT ¶94:**

The foregoing acts of Defendants constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 et. seq.

**ANSWER:**

The allegations in Paragraph 94 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 94.

**COMPLAINT ¶95:**

By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

**ANSWER:**

The allegations in Paragraph 95 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 95 and deny that Plaintiff is entitled to any remedy in law or equity.

## COUNT IV: COMMON LAW UNFAIR COMPETITION

**COMPLAINT ¶96:**

Wahl repeats and realleges the allegations in paragraphs 1 through 95 as though fully set forth herein.

**ANSWER:**

Defendants incorporate by reference their responses to all proceeding paragraphs above.

**COMPLAINT ¶97:**

Defendants' acts as alleged constitute unfair competition under the common law of the State of Illinois. Defendants' false, deceptive, and misleading representations are likely to mislead and deceive the public and already have misled and deceived the public.

**ANSWER:**

The allegations in Paragraph 97 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 97.

**COMPLAINT ¶98:**

Defendants' conduct is willful, deliberate, intentional, and in bad faith.

**ANSWER:**

The allegations in Paragraph 98 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 98.

**COMPLAINT ¶99:**

Wahl has been and will likely continue to be damaged by Defendants' false, deceptive, and misleading representations in an amount to be determined at trial.

**ANSWER:**

The allegations in Paragraph 99 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 99 and deny that Plaintiff is entitled to any relief.

**COMPLAINT ¶100:**

By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

**ANSWER:**

The allegations in Paragraph 100 state a legal conclusion to which no response is required.

Defendants deny any remaining allegations in Paragraph 100 and deny that Plaintiff is entitled to any remedy in law or equity.

**PRAYER FOR RELIEF**

Defendants deny any remaining allegations in the unnumbered paragraphs enumerating Plaintiff's relief sought, including each and every subpart. Defendants further deny that Plaintiff is entitled to any relief.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

To the extent a response to Plaintiff's jury demand is required, Defendants admit only that Plaintiff demands a jury trial and deny any remaining allegations.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants state the following affirmative and other defenses. In asserting these defenses, Defendants do not assume the burden of proof with regard to any issue upon which the applicable law places the burden of proof on Plaintiff.

## FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because none of the marketing materials identified in the Complaint are false or misleading. Alternatively, even if any such materials are adjudicated to be deceptive, which is expressly denied, they would not have caused or been likely to cause any injury to Plaintiff.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, because of unreasonable delay in filing the Complaint, and/or by the applicable statute of limitations.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, on the grounds of mootness.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has not suffered any actual injury, loss, or damages; or, in the alternative, any injury, loss, or damages that Plaintiff may have suffered were caused by its own conduct.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to make reasonable efforts to prevent or mitigate any injury, loss, or damages.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the losses that Plaintiff allegedly suffered were not proximately caused by any act or omission of Defendants.

## TENTH DEFENSE

Plaintiff's damages, if any, are speculative and unascertainable.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that any award of damages to Plaintiff would be excessive, punitive, and disproportionate to any alleged injury suffered by Plaintiff.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that any harm allegedly suffered by Plaintiff arose out of its own acts and/or omissions that adversely and substantially affected its interests.

## THIRTEENTH DEFENSE

Plaintiff's request for equitable relief is barred, in whole or in part, because Plaintiff has available an adequate remedy at law.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants at all relevant times, acted reasonably, justifiably, lawfully, and in good faith based on all relevant facts and circumstances known by Defendants. To the extent a court holds that Plaintiff is entitled to penalties, which is specifically denied, Defendants acted, at all relevant times, on the basis of a good faith and reasonable belief that they had complied fully with all applicable federal and state law. Consequently, Defendants' conduct was not knowing, intentional, or willful.

## FIFTEENTH DEFENSE

To the extent that any unlawful conduct occurred, which Defendants deny, Defendants took all reasonable steps to prevent the alleged unlawful conduct and were not aware of Plaintiff's purported complaints of unlawful conduct. Accordingly, Plaintiff's claims are barred or, alternatively, Plaintiff's relief is limited.

## SIXTEENTH DEFENSE

Plaintiff's claims fail, in whole or in part, because the alleged practices of Defendants are not unfair, unlawful, or fraudulent, and are not likely to deceive the public. In addition, Defendants gained no competitive advantage by such practices, and the benefits of the alleged practices outweigh any harm or other impact they may cause.

## SEVENTEENTH DEFENSE

The claims against Gamma+ should be dismissed for lack of personal jurisdiction.

## **RESERVATION OF ADDITIONAL DEFENSES**

Defendants have not knowingly or intentionally waived any applicable affirmative defenses, and thus reserve the right to assert and rely on any and all affirmative defenses to Plaintiff's Complaint that are available under applicable law, and any other defenses that may now exist or in the future be available based on discovery and further investigation in this case.

WHEREFORE, Defendants respectfully request that the Court determine and adjudge:

A.     that the Complaint be dismissed on the merits;

B.     that Plaintiff takes nothing by the Complaint;

C.     that Defendants be awarded its costs and expenses, including attorneys' fees, to the extent allowed by law; and

D.     that Defendants be awarded such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Defendants demand a trial by jury on all issues so triable.

DATED: November 20, 2025                Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Paul J. Yovanic Jr.*

    Joseph Orzano (*pro hac vice pending*)
    E-mail: jorzano@seyfarth.com
    Allen M. Thigpen (*pro hac vice pending*)
    E-mail: athigpen@seyfarth.com
    SEYFARTH SHAW LLP
    Seaport East
    Two Seaport Lane, Suite 1200
    Boston, MA 02210-2028
    Tel. No.: (617) 946-4800
    Fax No.: (617) 946-4801

    Paul J. Yovanic Jr.
    Email: pyovanic@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive
    Suite 8000
    Chicago, Illinois 60606-6448
    Telephone:      (312) 460-5000
    Facsimile:      (312) 460-7000

    *Attorneys for Defendants*
    *STYLECRAFT, LLC and GAMMA+NA, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via first class and electronic mail to those indicated as non-registered participants on November 20, 2025.

*/s/ Paul J. Yovanic Jr.*
Paul J. Yovanic Jr.