**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| WAHL CLIPPER CORPORATION, | Case No. 3:25-cv-50406 |
| Plaintiff, | |
| v. | Hon. Judge Rebecca R. Pallmeyer |
| STYLECRAFT, LLC and GAMMA+ NA, LLC, | Hon. Magistrate Judge Michael F. Iasparro |
| Defendants. | |

## DEFENDANTS' MOTION TO COMPEL

Defendants StyleCraft, LLC ("StyleCraft") and Gamma+ NA, LLC ("Gamma+") (together, "Defendants") hereby move this Court pursuant to Federal Rule of Civil Procedure 37(a) to compel Plaintiff Wahl Clipper Corporation ("Wahl") to provide full and complete responses to Requests for Production Nos. 8–12 and 17 and Interrogatories Nos. 4, 6, 7, 9, and 10.

### INTRODUCTION

Wahl filed this lawsuit alleging that Defendants falsely advertise the domestic origin and performance of their professional grooming products. But in drafting its Complaint, Wahl went further, using it as a platform to tout its own supposedly superior advertising conduct. Wahl affirmatively alleges that it adheres to rigorous testing and quality control measures and complies with the Federal Trade Commission's ("FTC's") "Made in USA" standards, and that Defendants' failure to do the same caused Wahl competitive injury and damages. Having put its own advertising conduct at the center of its injury, causation and damages theory, and making it a central theme of its case, Wahl now refuses all discovery on those topics, claiming its own advertising practices are simply "not at issue in this case." In a transparent attempt to evade its discovery obligations, Wahl also now seeks file an amended pleading without allegations regarding its own advertising conduct.

Wahl's position is untenable for three independent reasons. First, the allegations in Wahl's own Complaint make its advertising practices directly relevant. Wahl's theory of injury and damages, and indeed the theme of its case, depends on a comparison between the parties' advertising conduct. Wahl chose to plead that comparison and inject the theme into this case. It cannot use the comparison as a sword to establish injury and damages while shielding all underlying evidence from scrutiny. Moreover, simply filing an amended pleading without the comparison allegations, as Wahl now seeks to do, does not change Wahl's theory of the case. Nor does it preclude Wahl from relying on its comparison theme later in the case or at trial.

Second, even if Wahl never pleaded its own purportedly superior advertising practices, Defendants assert an unclean hands defense that is directly and independently supported by the discovery at issue. Wahl makes the same two categories of representations it accuses Defendants of making—origin claims and performance claims—for products that Wahl alleges directly compete for the same consumers in the same professional grooming market as Defendants' products. A party that seeks equitable relief from a court must come to that court with clean hands. Discovery into whether Wahl's hands are in fact clean is not only relevant, it is essential. Third, evidence of Wahl's own advertising practices is relevant for additional reasons, regardless of Plaintiff's allegations of its own advertising practices and Defendants' unclean hands defense.

Defendants respectfully request that the Court compel Wahl to provide full and complete responses to Requests for Production Nos. 8–12 and 17 and Interrogatories Nos. 4, 6, 7, 9, and 10.

## BACKGROUND

**A.      This Lawsuit**

Wahl filed this action on September 16, 2025, alleging two categories of false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Compl. ¶ 12.)  First, Wahl alleges that Defendants falsely advertised their products as "Developed/Designed/Engineered in USA"

2

when the products are allegedly copies of designs originating with Chinese manufacturer Moreda. (*Id*. ¶¶ 3, 4, 26, 30, 32.) Second, Wahl alleges that Defendants misrepresented battery run time, charge time, and cutting capabilities of their products, relying on third-party testing they commissioned from Gaynes Labs. (*Id*. ¶¶ 62, 65-71.)

Wahl did not limit its Complaint to Defendants' alleged conduct. In Paragraph 19 of the Complaint, Wahl affirmatively alleged that it, unlike Defendants, adheres to "rigorous testing and quality control measures" and complies with the FTC's "Made in USA" standards. (Compl. ¶ 19.) These allegations are central to Wahl's theory of competitive injury: that Wahl spent the time and resources to do things right, that Defendants did not, and that Wahl was harmed as a result. Those allegations additionally introduce Wahl's chosen theme of its case, that not only do Defendants purportedly deceptive advertisers but Wahl does not.

**B.     The Disputed Discovery**

On January 30, 2026, Defendants served 23 Requests for Production and 13 Interrogatories on Wahl. (Declaration of Joseph Orzano ("Orzano Decl."), ¶¶ 2-3, Exs. A, B.) The disputed requests and interrogatories address two topics: (1) Wahl's own advertising practices, including its product-origin and product-performance claims, its claimed FTC "Made in USA" compliance, and its testing and quality control measures; and (2) persons with knowledge of those matters and of the facts underlying the Complaint allegations. (*Id*.)

The Requests for Production at issue seek the following documents:

- Request for Production No. 8: "All Documents reflecting the rigorous testing and quality control measures you subject all of your products to as alleged in paragraph 19 of your Complaint."

- Request for Production No. 9: "All Documents reflecting, evidencing or that you otherwise contend support your assertion that you carefully adhere to the Federal Trade Commission's 'Made in USA' standards when making claims about your own products."

3

- Request for Production No. 10: "All Documents reflecting, evidencing or discussing the claims you make that are subject to the Federal Trade Commission's 'Made in USA' standards."

- Request for Production No. 11: "All Documents that substantiate the product-origin claims identified in response to Interrogatory Number 2."

- Request for Production No. 12: "All Documents that substantiate the product performance claims identified in response to Interrogatory Number 3."

- Request for Production No. 17: "All Documents related or referring to customer inquiries, complaints, feedback, testimonials, and/or comments regarding your product-origin or product performance claims."

(Orzano Decl., Ex. A.)  The Interrogatories at issue seek the following information:

- Interrogatory No. 4: "Identify all Documents and other evidence you contend support each of the product performance and/or product origin advertising claims identified in response to Interrogatory No. 2 and Interrogatory No. 3."

- Interrogatory No. 6: "Identify all person(s) responsible for and with knowledge of your 'rigorous testing and quality control measures,' as referenced in paragraph 19 of the Complaint, including a description of the subject matter of their knowledge as it relates to your testing and/or quality control measures."

- Interrogatory No. 7: "Identify all person(s) responsible for and with knowledge of your adherence to the Federal Trade Commission's standards for making 'Made in USA' claims when making claims about your own products as alleged in paragraph 19 of the Complaint, including a description of the subject matter of their knowledge as it relates to your adherence to the standards."

- Interrogatory No. 9: "Identify all persons with knowledge of your advertising practices concerning your clippers and trimmers, including any product origin or product performance claims in such advertising."

- Interrogatory No. 10: "For each individual identified in response to the previous interrogatory, provide a detailed description of the person's knowledge concerning your advertising practices."

(Orzano Decl., Ex. B.)

In response to each of these requests and interrogatories, Wahl refused to produce any documents or provide any substantive responses. Across all disputed requests, Wahl's objections rest on a single central premise: that its own product-origin claims, "Made in USA" claims, product-performance claims, and testing and quality control measures are "not at issue in this case."

4

(Orzano Decl., Exs. A, B.) Wahl also asserts in boilerplate fashion that the requests are overbroad, unduly burdensome, and disproportionate to the needs of the case. (*Id.*)

## C. Wahl's Own Advertising

Notwithstanding its objections, Wahl itself identified its own product-origin claims and product-performance claims. (Orzano Decl., Ex. B.) Those exhibits demonstrate that Wahl makes origin and performance representations to consumers that are symmetrical in kind to the representations it accuses Defendants of making. Wahl markets itself as "America's Clipper Company" and makes "Made in USA" representations, even though its products are manufactured abroad or contain significant foreign components. (Compl. ¶¶ 18–19.) Wahl also makes product-performance representations about battery life, run time, and cutting capability directly comparable to the performance claims it challenges in Defendants' advertising.

## D. Meet and Confer

Defendants served a deficiency letter on May 8, 2026, identifying the discovery deficiencies at issue and articulating two independent grounds of relevance: (1) Defendants' unclean hands affirmative defense; and (2) Wahl's own theory of injury/damages, which requires a comparison of how each party represented the domestic origin and performance of its products. (Orzano Decl., ¶ 4, Ex. C.) Wahl responded on May 20, 2026, maintaining its objections and arguing (incorrectly) that an unclean hands defense cannot apply in this case because Defendants' advertising conduct constitutes a "different transaction" from Wahl's advertising under Seventh Circuit law. (*Id.*, ¶ 5, Ex. D.)

The parties conducted a meet and confer via video conference on May 28, 2026. (Orzano Decl., ¶ 6.) The dispute was not resolved. (*Id.*) Wahl agreed to consider the authority Defendants cited in support of their unclean hands defense, but did not withdraw its objections. (*Id.*)

By email dated June 17, 2026, Wahl's counsel indicated that Wahl maintained its objections to Requests for Production Nos. 8–12 and 17 and Interrogatories Nos. 4, 6, 7, 9, and 10. (Orzano Decl., ¶ 7.) Wahl's counsel further stated that Wahl would seek leave to amend its Complaint to remove Paragraph 19. (*Id.*)

## ARGUMENT

### A.      Legal Standard

Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *AM Int'l, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981) (citing 8 Wright & Miller, *Federal Practice and Procedure, Civil* § 2008 (1970)); *accord Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). The scope of discovery should accordingly be broad in order to aid in the search for truth. *See Tice v. American Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D. Ill. 2000). Courts therefore commonly look unfavorably upon significant restrictions placed upon the discovery process. *See Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 611–12 (N.D. Ill. 2001); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (observing that liberal discovery under the federal rules seeks to make "trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent").

When a party fails to give discovery responses or the responses are evasive or incomplete, the requesting party may seek an order to compel discovery. Fed. R. Civ. P. 37(a). Rule 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection … if: … (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to respond that inspection will be permitted — or

6

fails to permit inspection — as requested under Rule 34." Accordingly, the burden rests upon the objecting party to show why a particular discovery request is improper and why the material sought is irrelevant or otherwise protected. *Meyer*, 199 F.R.D. at 611–12; *see also Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006). The party opposing discovery "must show specifically … how each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) (citation omitted). "[T]he party opposing a motion to compel carries a 'heavy' burden of persuasion." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012).

**B.      Wahl's Own Allegations and Theory of The Case Independently Make Its Advertising Practices Directly Relevant To This Litigation.**

Wahl's objection that its own advertising practices are "not at issue in this case" is refuted by Wahl's own Complaint. The scope of discovery follows the scope of the claims and defenses in the litigation. Fed. R. Civ. P. 26(b)(1); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (discovery may encompass any matter that bears on the "subject matter of the action"). A party controls its own pleadings, and what a party chooses to allege defines the boundaries of the dispute that discovery must illuminate. Wahl chose to draft a Complaint that placed its own supposedly superior advertising conduct at the center of this case and it must live with the discovery consequences of that choice. Wahl cannot escape these discovery obligations, and its own narrative framing of the case, simply by filing an amended complaint without the allegations, which Wahl now seeks to do with its pending motion to amend. *OTR Transp., Inc. v. Date Interfuse, LLC*, 2022 WL 296056, *4 (N.D. Ill. Feb. 1, 2022) (citing cases that "broadly stand for the proposition that the filing of an amended pleading does not foreclose discovery into statements made in a prior pleading.")

326662284v.1

As noted above, Wahl's Complaint was no bare-bones recitation of Defendants' alleged misconduct. Wahl filed a Complaint that affirmatively touted its own superior advertising practices to support its claims of injury and damages, and as a theme of its case. In Paragraph 19, Wahl alleged that, unlike Defendants, it adheres to "rigorous testing and quality control measures" and complies with FTC "Made in USA" standards. These are not passive background allegations. They are affirmative representations about Wahl's own conduct that Wahl placed in its Complaint because they are integral to its theory of how it was harmed and Wahl's overall theme of its case. Wahl's damages argument and theme is that it invested the time and resources to do things right, that Defendants did not, and that Defendants gained an unfair competitive advantage as a result.

Wahl's damages theory and theme requires a comparison of the parties' advertising conduct, and that comparison requires discovery into both parties' representations, not just one. Wahl cannot allege in its Complaint that it adheres to rigorous testing and FTC-compliant "Made in USA" standards and then refuse all discovery on whether those allegations are true. Whether consumers were actually influenced by the alleged differences between the parties' advertising, including the specific origin claims and product performance claims at the center of this case, is a question that cannot be answered without examining both parties' representations: their content, their accuracy, and the consumer response they generated. RFPs 8 through 12 and 17 and Interrogatories 4, 6, 7, 9, and 10 go to exactly these questions.

Wahl's position is further undermined by its own discovery responses. Wahl has already provided substantive interrogatory responses identifying its product-origin claims and product-performance claims (Orzano Decl., Ex. B), thereby acknowledging that this information exists, is within its possession, and is relevant to the case. Yet Wahl inexplicably refuses to produce a single document substantiating those claims. A party cannot identify the representations it makes to

8

consumers and then withhold the evidence, or absence of evidence, that stands behind them. That is the definition of using one's pleadings as both a sword and a shield.

**C.**     **Defendants' Unclean Hands Defense Is Legally Viable And Independently Justifies The Disputed Discovery.**

Even setting aside the independent relevance of Wahl's advertising to injury, causation and damages and to Wahl's overall case theme, Defendants' unclean hands defense independently entitles them to the discovery they seek. *See* Dkt. 23 at p. 34. Wahl's argument that the defense is legally deficient, and therefore cannot justify the discovery, is wrong on the law and on the facts.

The Supreme Court has long recognized that the unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 815 (1945). The doctrine is "'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'" *Id.* (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245–46 (1933)). Critically, "one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor." *Id.*

Unclean hands is a well-recognized equitable defense to Lanham Act false advertising claims. *See Bidi Vapor LLC v. Vaperz LLC*, 543 F. Supp. 3d 619, 627 (N.D. Ill. 2021) (denying preliminary injunction in Lanham Act false advertising case on unclean hands grounds where plaintiff's own product made the same type of misrepresentation it alleged against the defendant); *see also Fuddruckers, Inc. v. Doc's B.R. Others*, *Inc*., 826 F.2d 837, 847 (9th Cir. 1987) (holding that "[u]nclean hands is a defense to a Lanham Act infringement suit"). Because Wahl seeks both injunctive and monetary relief, the defense is directly applicable. A party seeking equitable relief must come to a court of equity with clean hands. *See Precision*, 324 U.S. at 814 (unclean hands

9

"closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").

Critically, the discovery at issue does not depend on the unclean hands defense ultimately prevailing at trial. The Seventh Circuit has held that a plaintiff's similar misconduct is "relevant to the question of what if any remedy [the plaintiff] is entitled to." *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985). Even if the Court were to conclude at some later stage that unclean hands does not bar Wahl's claims entirely, Wahl's own advertising conduct would remain relevant to the scope of any injunctive relief and the measure of any damages award. Discovery under Rule 26(b)(1) is broad and extends to any matter relevant to any party's claim or defense; it is not limited to defenses the Court has already ruled viable. Defendants have asserted the defense, it has not been stricken, and it is supported by the record. That is more than sufficient to open discovery.

Moreover, the unclean hands defense is at its strongest where the plaintiff's own misconduct mirrors the defendant's alleged misconduct in the same market, targeting the same consumers, on the same type of claim. *Bidi Vapor* illustrates this principle. There, Bidi sued Vaperz for advertising that its MNGO Stick contained 6% nicotine when testing showed it actually contained only 3% nicotine. The court denied a preliminary injunction in part because Bidi's own Bidi Stick—also advertised at 6% nicotine—may have contained as little as 5.47% nicotine. *Bidi Vapor*, 543 F. Supp. 3d at 627. Bidi could not sue Vaperz for overstating nicotine content while making the same type of misrepresentation on its own product. The symmetry of the conduct—same product attribute, same type of claim, same market—was the basis of the defense. *Id.*

*Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339 (S.D.N.Y. 2008), reinforces the point. There, P&G sued Ultreo, a new market entrant, for making "beyond-the-bristles" cleaning claims about its ultrasound toothbrush based on in vitro laboratory studies. The court denied P&G's motion for a preliminary injunction, finding that P&G's own comparable advertising

10

weighed against a finding of irreparable harm, including because P&G had engaged in virtually identical advertising—specifically, P&G had made the same "beyond-the-bristles" cleaning claims based on the same type of in vitro laboratory studies, including through its collaboration with Philips. *Id.* at 355–56. The court reasoned that P&G could not claim irreparable harm where it had itself engaged in virtually identical "beyond-the-bristles" advertising based on in vitro studies. *Id.* at 356. The court reached this conclusion even though P&G's challenged conduct involved a different product marketed years earlier, a far more attenuated connection than exists here, where Wahl's origin and performance representations are ongoing and directed at the same consumers in the same market.

Wahl alleges that Defendants falsely advertised the domestic origin of their products by claiming they were "Developed/Designed/Engineered in USA." Yet Wahl itself markets its products as "America's Clipper Company" and makes "Made in USA" representations even though its products are manufactured abroad or contain significant foreign components. Wahl alleges that Defendants misrepresented their products' battery run time, charge time, and cutting capability. Yet Wahl makes the same categories of product-performance representations about its own competing products to the same consumers. As one court has recognized, it is "arguably frivolous" to pursue false advertising claims under the Lanham Act based on statements repeated from the plaintiff's own promotional materials—particularly where, as here, those materials were directed at the very consumers the plaintiff now claims were misled. *HealthNow v. Catholic Health Sys.*, 2015 WL 5673123, at *6 (W.D.N.Y. Sept. 24, 2015). It would be equally inequitable to allow Wahl to invoke this Court's equitable powers to enjoin Defendants for conduct that Wahl is simultaneously and openly engaging in. *See Procter & Gamble*, 574 F. Supp. 2d at 355–56.

Wahl's overarching "different transaction" argument rests on a conception of the relevant transaction that simply does not fit the Lanham Act false advertising context. In a contract dispute

11

or shareholder derivative suit, the "transaction at issue" is a specific, discrete event, and the concern that unclean hands will become a "loose cannon" untethered to the dispute is well-founded. But when evaluating unclean hands in a Lanham Act false advertising case, the relevant "transaction" is the competitive marketplace, the ongoing competition for customers in which both parties simultaneously make representations about the same product attributes to the same consumers. Wahl's conduct in that marketplace is not a "different transaction", but rather is the other half of the alleged competitive relationship that gives rise to this litigation. As discussed below, none of the cases Wahl cites requires a different conclusion.

## D.     Wahl's Cases Are Distinguishable.

Wahl relies on five cases to support its "different transaction" argument. (*See* Orzano Decl., Ex. D.) None compels the result Wahl seeks, and the most directly applicable of those cases actually supports Defendants' position.

In *Redbox Automated Retail, LLC v. Xpress Retail LLC*, No. 17 C 5596, 2018 WL 950098 (N.D. Ill. Feb. 20, 2018), the court examined the subject matter of the competing claims to determine whether the plaintiff's alleged misconduct was sufficiently related to the defendant's to support an unclean hands defense. *Id.* at *11. In conducting that analysis, the court surveyed the governing judicial authority applying unclean hands where the plaintiff engaged in "virtually identical misrepresentations" to those it challenged. *Id*. The court ultimately declined to apply the defense because the claims at issue in that case were entirely unrelated; the plaintiff's alleged misrepresentations about "no late fees" and DVD availability had nothing to do with the defendant's misrepresentations about early access to film titles. *Id*. That is the opposite of this case, where both parties make the same two categories of claims—product-origin claims and product-performance claims—about the same type of products to the same consumers in the same professional grooming market. Under the *Redbox* court's own subject-matter framework, and the

12

authority it surveyed, the virtually identical nature of the parties' competing representations here places this case squarely within the unclean hands doctrine.

Two of Wahl's remaining cases—*Cement-Lock v. Gas Technology Institute*, 618 F. Supp. 2d 856, 889 (N.D. Ill. 2009), and *American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986)—are not false advertising cases at all, but instead arise from a shareholder derivative suit and a contract dispute. The Seventh Circuit's "loose cannon" concern in *American Hospital Supply* addressed whether wholly unrelated conduct could bar relief in a contract case. That concern has no application here, where the alleged misconduct is not collateral but mirrors the very advertising representations at issue in the same market, to the same consumers.

The two advertising cases Wahl cites—*Dyson, Inc. v. SharkNinja Operating LLC*, 259 F. Supp. 3d 816 (N.D. Ill. 2017), and *Vital Proteins, LLC v. Ancient Brands, LLC*, No. 1:22-cv-02265, 2023 WL 5671857 (N.D. Ill. Sep. 1, 2023)—are factually distinguishable in ways that highlight the very features that make Defendants' defense compelling.

In *Dyson*, the court rejected an unclean hands defense based on Dyson's "twice the suction" advertising claim. *Dyson*, 259 F. Supp. 3d at 836. Two factors drove that result that are entirely absent here. First, Dyson's challenged claim was already the subject of a separate lawsuit such that the court was not confronted with ongoing, unaddressed misconduct. Second, the court emphasized that Dyson had already removed the challenged claim from its advertising. Here, Wahl continues to make its "America's Clipper Company," "Made in USA," and product-performance representations right now, in the same market, to the same consumers. There is no prior lawsuit addressing Wahl's conduct and no remediation to point to.

*Vital Proteins* is distinguishable on three independent grounds. First, there was no symmetry of conduct. Vital's false advertising claim concerned Ancient's product advertising. Ancient's counterclaim concerned whether a celebrity spokesperson actually worked at Vital.

13

326662284v.1

These are categorically different types of conduct—product advertising versus corporate affiliation misrepresentation. *Vital Proteins*, 2023 WL 5671857, at *1, 5. By contrast, here both parties are alleged to have made the same categories of misrepresentations about the same type of products to the same consumers. Second, *Vital Proteins* was decided on a motion to stay discovery pending a motion to dismiss a counterclaim, not a motion to compel discovery supporting an affirmative defense. Defendants are not pressing a counterclaim; they are asserting a defense to Wahl's own claims for equitable relief. A party seeking an injunction must come to equity with clean hands, and the relevance of Wahl's advertising conduct to that inquiry does not depend on the procedural vehicle through which it is raised. Third, a significant driver of the *Vital Proteins* ruling was that the counterclaim was facially deficient under Rule 9(b). *Id.* No such deficiency exists here. Defendants' unclean hands defense is supported by Wahl's own Complaint allegations about its testing, quality control, and FTC compliance; by Wahl's own interrogatory responses identifying the origin and performance claims it makes; and by the exhibits Wahl attached to those responses identifying those specific claims by name.

**E.      Wahl's Own Advertising is Independently Relevant Regardless of Wahl's Allegations in Paragraph 19 of the Complaint and Defendants' Unclean Hands Defense.**

Evidence that Wahl engages in the same advertising conduct it alleges Defendants engage in is relevant for additional reasons, regardless of the allegations in Paragraph 19 of the Complaint and Defendants' unclean hands defense. For example, Wahl alleges that Defendants' product-origin and performance claims "unfairly and unlawfully shift[] income and profit from Wahl to Defendants." (Compl. ¶79.) Defendants are not required to simply accept Wahl's claims of the economic effect of Defendants' own advertising without probing whether Wahl engaged in similar false advertising, and the economic effect of Wahl's own advertising on sales of competing products. As another example, Defendants' discovery is relevant to whether, for instance, Wahl relies on the same type or amount of substantiation that it claims Defendants must possess.

14

**F.      Wahl's Boilerplate Burden Objections Do Not Justify Its Refusal To Respond.**

Wahl's remaining objections, that the disputed requests are overbroad, unduly burdensome, and disproportionate to the needs of the case, are boilerplate assertions unsupported by any specific showing of burden. A party opposing discovery "must show specifically … how each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *BankDirect*, 2017 WL 5890923, at *2. Boilerplate objections that do not explain with particularity how a specific request is burdensome are "tantamount to not making any objection at all." *Burkybile v. Mitsubishi Motors*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 29, 2006).

Wahl has not met this standard. As an initial matter, Wahl's own discovery requests are virtual mirror images of the requests at issue in this Motion, undermining the propriety of Wahl's burden objections.  (Orzano Decl., Ex. C at p. 2.)  Wahl should not be allowed to demand broad discovery into Defendants' advertising practices, while stonewalling Defendants from conducting their own discovery. Additionally, Wahl's only burden argument is that responding to Interrogatory No. 6 could require identification of "potentially hundreds of Wahl employees" involved in testing and quality control. (Orzano Decl., Ex. B.) But the number of employees involved in a practice that Wahl itself chose to allege in its Complaint is not a basis for refusing discovery, but rather a reflection of the scope of the allegations Wahl chose to make. If Wahl's "rigorous testing and quality control measures" involve hundreds of employees, that is because Wahl alleged that those measures are rigorous, and Defendants are entitled to test that allegation.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court Order Wahl to provide full and complete responses to Requests for Production Nos. 8–12 and 17 and Interrogatories Nos. 4, 6, 7, 9, and 10.

15

326662284v.1

Dated: June 18, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Joseph Orzano*
  Joseph Orzano (*admitted pro hac vice*)
  Allen M. Thigpen (*admitted pro hac vice*)
  Seaport East
  Two Seaport Lane, Suite 1200
  Boston, MA 02210
  Telephone:  (617) 946-4800
  jorzano@seyfarth.com
  athigpen@seyfarth.com

  Paul J. Yovanic
  IL Bar No. 6327815
  233 South Wacker Drive, Suite 8000
  Chicago, Illinois 60606
  Telephone:  (312) 460-5000
  pyovanic@seyfarth.com

  *Attorneys for Defendants*
  *StyleCraft, LLC and*
  *Gamma+ NA, LLC*


## CERTIFICATION PURSUANT TO LOCAL RULE 37.2

Pursuant to Northern District of Illinois Local Rule 37.2, undersigned counsel for Defendants StyleCraft, LLC and Gamma+ NA, LLC (together, "Defendants") hereby certifies that, before filing this motion, Defendants' counsel, Joseph Orzano of Seyfarth Shaw LLP, and counsel for Plaintiff Wahl Clipper Corporation, Thomas P. Jirgal of Loeb & Loeb LLP, conducted a telephonic meet and confer on May 28, 2026 in an effort to resolve the discovery disputes at issue in good faith, but were unable to do so.

   */s/ Joseph Orzano*
   Joseph Orzano

16