**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

WAHL CLIPPER CORPORATION,

    Plaintiff,

     v.

STYLECRAFT, LLC and
GAMMA+ NA, LLC,

    Defendants.

NO. 3:25-cv-50406

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT**

Plaintiff Wahl Clipper Corporation ("Wahl") brings this claim for false advertising and related claims against defendant StyleCraft, LLC ("StyleCraft") and Gamma+ NA, LLC ("Gamma+," and together with StyleCraft, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. Wahl is an American manufacturer of professional and home grooming products that is headquartered in Sterling, Illinois. Wahl employs over 650 individuals in the United States, most of whom work and reside within the Northern District of Illinois.

2. Since its founding in 1919, Wahl has been an innovator of professional and home grooming products. The company's founder, Leo J. Wahl, invented the very first electric clipper with a drive motor in the product's hand, and applied for over 100 patents during his lifetime. Today, Wahl employs over 50 product engineers and industrial designers in the United States who continue this proud legacy of innovation.

3. Defendant StyleCraft is a recent entrant to the market for professional grooming products, but it has rapidly gained market share. Founded in 2017, StyleCraft positions itself as

an American-based company that designs and engineers its professional clippers and trimmers in the United States. StyleCraft acknowledges in some cases that its products are manufactured in China, but it claims without any qualification that products such as its Instinct X clipper and Saber trimmer were developed, designed, and/or engineered in the USA. StyleCraft's claims are powerful ones that appeal to American consumers' sense of pride in American ingenuity, and their desire to support domestic employers. They are, however, egregiously false.

4. Contrary to the clear and express message of its advertising claims, StyleCraft's products were not developed, designed, or engineered in the United States. Indeed, StyleCraft does not appear to even employ any product designers or engineers in the United States. Rather, StyleCraft's clippers and trimmers appear in most cases to be virtual carbon copies of Chinese clippers and trimmers that were first sold in China by a Chinese company known as Moreda under its "MRD" brand. Moreda, in fact, owns numerous patents listing Chinese inventors that cover critical aspects of StyleCraft's clippers and trimmers.

5. StyleCraft's attempt to wrap its company and product portfolio within a halo of American innovation is deceiving consumers and causing them to pay a premium for products that were predominately, if not exclusively, developed, designed, and engineered in China.

6. StyleCraft and its corporate affiliate, Gamma+, are also misrepresenting the performance capabilities of their clippers and trimmers with false claims regarding their products' run time, charge time, and cutting capabilities—claiming in some cases that their products deliver four hours of cordless run time when, in fact, the products only deliver about half this.

7. Defendants' false claims are deceiving consumers and causing direct and immediate injury to Wahl in its own sale of professional clippers and trimmers. They must stop. Through this action, Wahl seeks an injunction preventing StyleCraft and Gamma+ from any

further dissemination of their false claims, disgorgement of the profits that Defendants have wrongfully obtained as a result of their false claims, and an award of attorney's fees.

## PARTIES

8.      Wahl Clipper Corporation is an Illinois corporation with its principal place of business at 2900 North Locust St., Sterling, Illinois 61081.

9.      Defendant StyleCraft, LLC is a Florida Limited Liability Company with its principal place of business at 1120 South Rogers Circle, Boca Raton, FL 33487.

10.     Defendant Gamma+ NA, LLC is a Florida Limited Liability Company with its principal place of business at 1120 South Rogers Circle, Boca Raton, FL 33487.

11.     On information and belief, Gamma+ is a partnership between StyleCraft and Gamma Piu Italy.  According to Gamma+'s website, Gamma+ is "under the StyleCraft corporate umbrella."  In addition, StyleCraft's founder, Kenneth Russo, identifies himself on LinkedIn as the Chief Executive Officer of both StyleCraft and Gamma+, while his son, Austin Russo, identifies himself as a co-founder of both companies.

## JURISDICTION

12.     This Court has subject matter jurisdiction over Wahl's claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367, as Wahl is asserting claims under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and its state-law claims arise from the same operative facts.

13.     The Court also has jurisdiction over this action under 28 U.S.C. § 1332 since the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

14.     Defendants are subject to personal jurisdiction in this District as a result of their pervasive and ongoing contacts with the State of Illinois and this District.  Defendants advertise

and sell their products to barbers and stylists in this District through their website, through distributors, and through brick-and-mortar retailers such as CosmoProf. On information and belief, Defendants have also participated in trade shows in this District, and established an authorized service center for the repair and improvement of StyleCraft and Gamma+ products in this District.

15.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Wahl's claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

16.     Electric clippers and trimmers are essential tools for barbers and stylists in the United States and around the world. Not only do they expedite the hair cutting process by allowing for bulk hair removal, they facilitate the creation of various types of haircuts, from short styles to fades, and for detailing and refining hairlines and beards. For some barbers and stylists they are a finishing tool, but for many others, they are the primary tools of their trade craft that they continuously use throughout the day to cut and style hair. In the United States, it is estimated that professional barbers and stylists spend hundreds of millions of dollars on clippers and trimmers every year.

17.     Headquartered in Sterling, IL, Plaintiff Wahl has been in the business of designing and manufacturing hair clippers and trimmers for over 100 years. Since its inception in 1919, the company has been known for its ground-breaking technology and high quality products. Wahl's founder, Leo J. Wahl, invented and patented the first practical electric clipper with the drive motor in the product's hand, and this invention revolutionized the barbering industry by providing a faster, more efficient, and more precise way to cut hair than the manual clippers that had prevailed

4

prior to Wahl's invention. Within his lifetime, Leo J. Wahl applied for over 100 patents on his various inventions.

18.     Wahl's corporate headquarters are in Sterling, IL, where it employs over 650 individuals across its 500,000+ square foot campus. This includes over 50 product engineers and industrial designers who continue the company's proud history of innovation. Wahl created the very first battery-powered clipper and trimmer in the late 1960s, and it has been using lithium technology in its cordless clippers and trimmers since 2009. Lithium ion technology provides for more power with a longer charge time than ordinary batteries. Wahl's significant and ongoing investment in product engineering and design has resulted in a robust patent portfolio—the company currently holds over 175 granted US patents and pending patent applications.

19.     Defendants StyleCraft and Gamma+ compete with Wahl with respect to the sale of clippers and trimmers to professional barbers and stylists in this District and throughout the United States.

20.     Founded in 2017, StyleCraft promotes itself as an American business, emphasizing its corporate headquarters in Florida. In a video on StyleCraft's website, filmed in and around StyleCraft's Florida headquarters, its founder states that StyleCraft has been recognized as the "number 2 fastest growing *manufacturing* company in the *United States*" (emphasis added). The voiceover appears while a single individual appears to be working on a product in a mailroom, leaving the impression that StyleCraft manufactures its products at its headquarters.

21.     Gamma+ similarly promotes itself on its website as "one of the fastest growing beauty and grooming brands in the country. We are family-owned and US based…" This text appears under a video showing people manufacturing Gamma+ products, leaving the impression that those individuals are located in the United States.

5

22.     One of Defendants' founders has claimed that the company's "point of difference is our technology, innovation and product development.  We have so many ideas that have never been executed before."  Defendants' founder has also stated that StyleCraft releases "new products at a fast pace.  And not just new colors, but new designs, molds and technologies."  StyleCraft widely advertises that its products are developed, designed, and engineered in the United States without any qualification or limitation.

23.     Defendants' purported development of their own products is also emphasized on the Gamma+ webpage:  "The GAMMA+ brand is defined by our aspiration to design and engineer the most innovative, high-quality grooming and beauty tools, through detailed collaboration between USA and Italy…Our innovative technologies and drive to continually make products that out-perform others have pushed us to the forefront of the industry."

24.     The speed with which Defendants are able to create and launch new products is surprising given the companies' relatively small size.  Upon information and belief, and as depicted on Defendants' websites, Defendants collectively employ around 50 individuals, none of whom are engineers.  Rather, on information and belief, most of Defendants' employees are dedicated to marketing and selling their products rather than product design or engineering.

25.     Rather than design, engineer, or manufacture their own products, Defendants, on information and belief, have outsourced these responsibilities to a Chinese developer and manufacturer, Guangdong Huida Electric Appliance Co. Ltd., which is popularly known as Moreda ("Moreda").  Upon information and belief, Defendants have Moreda design, engineer, and manufacture their products—many of which Moreda has already produced and sold under its own brand, "MRD"—before placing their own labels on them.  On information and belief, Defendants

then greatly mark up these Chinese-designed and manufactured products before selling them in the United States.

26. The speed with which Defendants' products come to market also foreclose rigorous product testing with the result being that Defendants' products are of inferior quality to Wahl's rigorously tested clippers and trimmers.

27. Defendants have also become known in the barber industry for the limited lifespan of their products.

## DEFENDANTS' FALSE DEVELOPMENT AND DESIGN CLAIMS

28. On information and belief, StyleCraft's professional clippers and trimmers are all manufactured in China by Moreda or other Chinese manufacturers. StyleCraft acknowledges in some cases that its products are manufactured in China, as it is legally obligated to do. But while StyleCraft sometimes acknowledges where its products are manufactured, it misleads consumers regarding the products' development, engineering, and design.

29. StyleCraft claims its clippers and trimmers were "engineered and designed in the USA" and/or "Developed in [the] USA" without any qualification or limitation. StyleCraft makes these claims online in its product descriptions, and it also prominently features these claims on its products' packaging where the claims are presented in conjunction with an American flag. For many products, StyleCraft dedicates one whole panel of its product packaging to the claim that the product was "Developed in USA," making it the most prominent claim on the products' packaging.

30. StyleCraft's claims that its products are developed, designed, or engineered in the United States are highly resonant with American consumers who value American innovations and the United States-based companies who foster and support such innovations through their employment of American product designers and engineers. These claims not only provide a strong

7

reason for barbers and stylists to choose StyleCraft products over competitive alternatives from Wahl and others that do not feature such claims, they also provide a justification for barbers and stylists to pay a premium for StyleCraft's American-designed and engineered products.

31. But StyleCraft's claims are not true. StyleCraft's clippers or trimmers were not developed, designed, or engineered in the Unted States. Many of StyleCraft's products are virtually identical to products previously released by the Chinese company, Moreda, in China under its MRD brand. In addition, many of StyleCraft's products are covered by Chinese design and utility patents held by Moreda and with no discernable connection to StyleCraft, or any StyleCraft engineer. Indeed, StyleCraft, on information and belief, does not employ any engineers or hold any patents in the United States covering any aspect of its products' design or engineering.

**A.       StyleCraft's Instinct X Clipper**

32. StyleCraft, on information and belief, released its Instinct X Clipper in the United States in or around December 2023. As reflected in Image 1, StyleCraft claims without qualification on the packaging for this clipper that it was "Developed in USA":

**<u>Image 1</u>**



33. Contrary to StyleCraft's claims, the StyleCraft Instinct X clipper appears identical to the MRD HC-999A clipper manufactured and sold by the Chinese company, Moreda, that on

information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:



| MRD HC-999A | StyleCraft Instinct X Clipper |

34. The Instinct X clipper also appears to be covered by Chinese design patents held by Moreda (CN307190982S; CN307684743S). The patents do not list any U.S. based inventors or assignees and have priority dates of December 16, 2021 and July 27, 2022, respectively. The clipper also appears to be covered by a Chinese utility patent (CN216490163U) which sets forth a priority date of December 16, 2021 and does not list any U.S. based inventors or assignees.

35. Given the above, it is false and misleading for StyleCraft to claim its Instinct X clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Instinct X clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**B.     StyleCraft's Instinct Clipper**

36. StyleCraft, on information and belief, released its Instinct clipper in the United States in or around December 2022. As reflected in Image 2, StyleCraft claims without qualification on the packaging for this clipper that it was "Developed in USA":

**Image 2**



37.     Contrary to StyleCraft's claims, the StyleCraft Instinct clipper appears identical to the MRD HC-999 clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:



| MRD HC-999 | StyleCraft Instinct Clipper |
| --- | --- |

38.     The Instinct clipper also appears to be covered by Chinese design patents (CN307483659S; CN307190982S) and a utility patent (CN216490163U) held by Moreda. The patents do not list any U.S. based inventors or assignees and have priority dates between December 16, 2021 and April 26, 2022.

10

39.     Given the above, it is false and misleading for StyleCraft to claim its Instinct clipper was "developed," "designed," or "engineered" in the USA.  Upon information and belief, the Instinct clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**C.     StyleCraft's Saber Trimmer**

40.     StyleCraft, on information and belief, released its Saber trimmer in the United States in September 2022.  As reflected in Image 3, StyleCraft claims without qualification on the packaging for this trimmer states that the trimmer was "Developed in USA":

**<u>Image 3</u>**



StyleCraft also claims without qualification on the product webpage for the trimmer that it was "Engineered and designed in the USA."

41.     Contrary to StyleCraft's claims, the StyleCraft Saber trimmer appears identical to the MRD SmartBrain trimmer manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the trimmer in the United States:

11



| **MRD SmartBrain Trimmer** | **StyleCraft Saber Trimmer** |

42. The Saber trimmer also appears to be covered by a Chinese design patent held by Moreda (CN307760042S). The patent does not list any U.S. based inventors or assignees and has a priority date of September 5, 2022.

43. Given the above, it is false and misleading for StyleCraft to claim its Saber trimmer was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Saber trimmer was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**D.     StyleCraft's Saber II Clipper**

44. StyleCraft, on information and belief, released its Saber II clipper in the United States in October 2024. As reflected in Image 4, StyleCraft claims without qualification on the packaging for this clipper that the clipper was "Developed in USA":

12

**Image 4**



45.     Contrary to StyleCraft's claims, the StyleCraft Saber II clipper appears identical to the MRD SmartBrain clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:



| MRD SmartBrain Clipper | StyleCraft Saber II Clipper |
| --- | --- |

46.     The Saber II clipper also appears to be covered by a Chinese design patent held by Moreda (CN308579571S).  The patent does not list any U.S. based inventors or assignees and has a priority date of September 14, 2023.

13

47. Given the above, it is false and misleading for StyleCraft to claim its Saber II clipper was "developed," "designed," or "engineered" in the USA. Upon information and belief, the Saber II clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

### E. StyleCraft's Instinct Trimmer

48. StyleCraft, on information and belief, released its Instinct trimmer in the United States in or around January 2023. As reflected in Image 5, StyleCraft claims without qualification on the packaging for this clipper that the clipper was "Developed in USA":

**Image 5**



StyleCraft also claims without qualification on the website for this clipper that it was "Engineered and designed in the USA."

49. Contrary to StyleCraft's claims, the StyleCraft Instinct trimmer appears identical to the MRD GMT-999 trimmer manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:



| MRD GMT-999 | StyleCraft Instinct Trimmer |
|---|---|

50.     The Instinct trimmer also appears to be covered by Chinese design patent (CN307483657S) held by Moreda.  The patent does not list any U.S. based inventors or assignees and has a priority date of April 26, 2022.

51.     Given the above, it is false and misleading for StyleCraft to claim its Instinct trimmer was "developed," "designed," or "engineered" in the USA.  Upon information and belief, the Instinct trimmer was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**F.      StyleCraft's Rogue Clipper**

52.     StyleCraft, on information and belief, released its Rogue clipper in the United States in or around April 2021.  StyleCraft claims without qualification on the website for this clipper that it was "Engineered and designed in the USA."

53.     Contrary to StyleCraft's claims, the StyleCraft Rogue clipper appears identical to the MRD HC-90 clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:

15



| MRD HC-90 | StyleCraft Rogue Clipper |
| --- | --- |

54.     The Rogue clipper also appears to incorporate several different Chinese and Hong Kong patents that are either pending or issued to Moreda (CN305562940S; CN108621209A; HK30001595A), none of which list any U.S. based inventors or assignees and each of which have priority dates pre-dating StyleCraft's release of the Rogue clipper which was released in or around April 2021.

55.     Given the above, it is false and misleading for StyleCraft to claim its Rogue clipper was "developed," "designed," or "engineered" in the USA.  Upon information and belief, the Rogue clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

### G.     StyleCraft's Ergo Clipper

56.     StyleCraft, on information and belief, released its Ergo clipper in the United States in or around July 2020.  StyleCraft claims without qualification on the website for this clipper that it was "Engineered and designed in the USA," and these claims are also included on the Amazon webpage for this clipper.

57.     Contrary to StyleCraft's claims, the Ergo Clipper appears identical to the MRD HC-90 clipper manufactured and sold by the Chinese company, Moreda, that on information and belief, was first available for sale in China before StyleCraft released a StyleCraft-branded version of the clipper in the United States:



| MRD HC-90 | Gamma+ Ergo Clipper | StyleCraft Ergo Clipper |
| --- | --- | --- |

58.     Notably, the clipper offered by Gamma+ under the Ergo name (upon information and belief, offered for sale outside of the United States), looks nearly identical to the StyleCraft Ergo and MRD HC-90 but does not tout any U.S. connection.

59.     The Ergo clipper also appears to incorporate a motor design covered by a Chinese utility patent application (CN108621209A) and Hong Kong utility patent held by Moreda (HK30001595A).  The patents do not list any U.S. based inventors or assignees and have priority dates from years before StyleCraft's release of the Ergo clipper in or around July 2020.

60.     Given the above, it is false and misleading for StyleCraft to claim its Ergo clipper was "developed," "designed," or "engineered" in the USA.  Upon information and belief, the Ergo clipper was conceived, designed, and engineered in whole or in significant part by Moreda in China.

**DEFENDANTS' FALSE PRODUCT PERFORMANCE CLAIMS**

61.     In addition to these false and misleading product development and design claims, Defendants are also misrepresenting the performance capabilities of their clippers and trimmers with false claims regarding their run time, charge time, and cutting capabilities.

62.     Cordless, battery-powered clippers and trimmers come with great benefits for professional barbers and stylists.  Because they do not have to be connected to a power outlet by a cord, barbers and stylists can cut hair anywhere and maneuver more freely around their clients. They are, however, limited by their battery life.  The longer a cordless clipper or trimmer can run on a single charge, the longer a barber or stylist is able to perform their services without needing to take a break to charge their tools, or to rotate in another costly appliance.  And the faster the battery charges, the more use a professional barber or stylist can get out of the device.

63.     Accordingly, claims pertaining to run time and charge time are highly material considerations to a haircare professional's decision to purchase a cordless clipper or trimmer.  They also serve as points of comparison when choosing between clippers and trimmers.  Simply put, a clipper or trimmer with a longer claimed run time and shorter claimed charge time will have an advantage over a competitor product that has a shorter claimed run time and longer claimed charge time. Defendants, on information and belief, were specifically aware of this competitive advantage in determining what run and charge times to identify on their product packaging and in online advertisements for their products.

64.     StyleCraft, for example, introduced its Instinct X clipper with claims that the clipper delivers 4 hours of run time based on a 2-hour charge time.  These claims appeared on the product's packaging and StyleCraft's website, and were widely disseminated online and through social media.  These claims are false.  Third party testing commissioned by Wahl reveals that the

18

Instinct X only delivers around 164 minutes of run time and takes over 3 hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

65. StyleCraft likewise claims on its Saber trimmer product page that the Saber's "LITHIUM-ION BATTERY delivers 3 hours of cordless run-time" which "is a game changer in the shop, salon, at home and on the go." Elsewhere on the product page, StyleCraft inflates the claim to "4 hour cordless run-time lithium-ion battery," which is also made on the product packaging, the Amazon product page, and in StyleCraft's social media promotion for the product. StyleCraft claims on the product packaging that the charge-time for the Saber trimmer, stating on the product packaging that it can charge in 90 minutes. These claims are false. Third party testing commissioned by Wahl reveals that the Saber trimmer only delivers around 157 minutes of run time and takes over 2 hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

66. StyleCraft promotes its Saber II clipper on the StyleCraft product webpage as having a "LITHIUM-ION battery deliver[ing] 2.5 hours of cordless run-time from 120 minutes of charge" which gives a barber "the freedom to style without interruptions." The charge-time and battery life claims are repeated on the product packaging. StyleCraft also repeats its battery life claims on the Saber II Amazon product page and in StyleCraft's social media promotion for the product. These claims are false. Third party testing commissioned by Wahl reveals that the Saber II clipper only delivers around 135 minutes of run time and takes about 3 and a half hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

67. On its website, StyleCraft claims its Rebel clipper's "LITHIUM-ION BATTERY delivers a leading 3 hours of cordless run-time with a 1-hour rapid charge." StyleCraft repeats these claims on the product's packaging and the product's Amazon page. These claims are false. Third party testing commissioned by Wahl reveals that the Rebel clipper only delivers around 128 minutes of run time and takes about 2 and a half hours to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

68. On its webpage for its X-Ergo clipper, Gamma+ states the clipper has a "120 minute cordless runtime and 105 minute re-charge." Gamma+'s Amazon page for the X-Ergo likewise states that the "LITHIUM-ION BATTERY delivers an [*sic*] 2 hours of cordless run-time with a 105-minute rapid charge." These claims are false. Third party testing commissioned by Wahl reveals that the X-Ergo clipper only delivers around 84 minutes of run time takes over 105 minutes to fully charge. On information and belief, the run time for this device would be even less when used in most professional work environments.

69. In addition to these false run and charge time claims, Gamma+ also makes false claims regarding the cutting capabilities of its X-Ergo clipper. Gamma+ emphasizes the cutting edge nature of its "9V Microchipped Motor" and that the "turbocharged long-life magnetic motor runs at 10,000 strokes per minute, not only offering the ultimate in speed, power, and longevity but the quietest performance of any professional clipper." Elsewhere on the page, Gamma+ states that "Operating at lightning speed the X-Ergo runs at 10,000 strokes per minute, fine tuned for maximum power." Gamma+ repeats its claims that the X-Ergo can run at 10,000 "SPM" (i.e., strokes per minute) on its Amazon product page and social media.

70. Gamma+'s claims are false. Third party testing commissioned by Wahl reveals that the X-Ergo only delivers around 9,000 SPM. Further exploration of the product has also

revealed that the microchip in the X-Ergo is set to only allow maximum performance of 9,000 SPM. Accordingly, the X-Ergo cannot, as a technical matter, operate at 10,000 "SPM."

## INJURY TO WAHL AND THE PUBLIC

71. Defendants' false claims about their products' development, design, and performance, individually and collectively, are deceiving professional consumers into mistakenly believing that Defendants' products possess qualities and performance attributes that they lack.

72. Defendants' false claims about their products' development, design, and performance, individually and collectively, are likely to cause professional consumers to purchase more of Defendants' clippers and trimmers, and to pay a higher price for these clippers and trimmers, than would otherwise be the case. On information and belief, Defendants are profiting financially from their false and misleading advertising claims through the sale of more products than they otherwise would have, and from their ability to charge higher prices for these products.

73. Defendants' false and misleading claims about their products' development, design, and performance, individually and collectively, have harmed Wahl and lured business to Defendants' products at Wahl's expense. In addition, Defendants' false performance claims have caused professional barbers and stylists to question Wahl's technology and why Wahl's products do not deliver the same amount of run time as Defendants' products purportedly do.

74. On information and belief, Defendants knew or should have known that their advertising claims are false and misleading, and thus acted knowingly, willfully, in reckless disregard of the truth, and in bad faith.

## COUNT I: FALSE ADVERTISING
### (15 U.S.C. § 1125(a)(1)(B))

75. Wahl repeats and realleges the allegations in paragraphs 1 through 74 as though fully set forth herein.

21

76. Defendants have made false, deceptive, and misleading descriptions and representations of fact in its commercial advertising concerning the nature, characteristics, and qualities of their goods in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

77. Defendants' false, deceptive, and misleading descriptions and representations of fact have deceived and are likely to deceive professional barbers.

78. Defendants' false, deceptive, and misleading descriptions and representations are material in that they influence the decision of professional barbers to purchase Defendants' products instead of those from Wahl, unfairly and unlawfully shifting income and profit from Wahl to Defendants.

79. Defendants' conduct is willful, deliberate, intentional, and in bad faith.

80. Defendants' false, deceptive, and misleading statements about their own goods have damaged Wahl's goodwill and reputation and have and are likely to continue to impact Wahl's sales in an amount to be determined at trial.

81. By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

## COUNT II: VIOLATION OF ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT
### (815 ILCS 505/2 *et. seq.*)

82. Wahl repeats and realleges the allegations in paragraphs 1 through 81 as though fully set forth herein.

83. Defendants have engaged in the foregoing unfair and deceptive acts and practices, in commerce, with the intent to cause the public to rely on, and with the effect that the consuming public has relied on, Defendants' false and misleading misrepresentations.

84. Defendants' false, deceptive, and misleading descriptions and representations have deceived and are likely to deceive purchasers and consumers into purchasing goods from

22

Defendants instead of Wahl, unfairly and unlawfully shifting income and profit from Wahl to Defendants.

85. Defendants' foregoing acts constitute deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et. seq.*

86. Defendants' conduct is willful, deliberate, intentional, and in bad faith.

87. Wahl has been and will likely continue to be damaged by Defendants' false and misleading representations in an amount to be determined at trial.

88. By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

**COUNT III: VIOLATION OF ILLINOIS
UNIFORM DECEPTIVE TRADE PRACTICES ACT
(815 ILCS 510/2 *et. seq.*)**

89. Wahl repeats and realleges the allegations in paragraphs 1 through 88 as though fully set forth herein.

90. StyleCraft has deployed false, deceptive, and misleading representations or designations of geographic origin in connection with its goods.

91. Defendants have also falsely and deceptively claimed their goods are of a particular quality when they are not.

92. Defendants' statements as to quality of their goods and StyleCraft's statements as to its products' origins are likely to deceive.

93. The foregoing acts of Defendants constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et. seq.*

94. By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl. Wahl has no adequate remedy at law.

## COUNT IV: COMMON LAW UNFAIR COMPETITION

95.     Wahl repeats and realleges the allegations in paragraphs 1 through 94 as though fully set forth herein.

96.     Defendants' acts as alleged constitute unfair competition under the common law of the State of Illinois.  Defendants' false, deceptive, and misleading representations are likely to mislead and deceive the public and already have misled and deceived the public.

97.     Defendants' conduct is willful, deliberate, intentional, and in bad faith.

98.     Wahl has been and will likely continue to be damaged by Defendants' false, deceptive, and misleading representations in an amount to be determined at trial.

99.     By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Wahl.  Wahl has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Wahl respectfully requests that the Court:

a)     Preliminarily and permanently enjoin Defendants, and their officers, agents, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly using in commerce, causing to be published, or otherwise disseminating and promoting Defendants' goods through the following deceptive and false claims: (i) as to StyleCraft, that its products are developed, engineered or designed in the USA; (ii) as to both Defendants, that their products have a battery charge time or run time that they do not actually have; (iii) as to both Defendants, their products have a greater SPM than they have; (iv) as to both Defendants, all other false, misleading, and deceptive statements described in this First Amended Complaint; and (v) all other false, misleading, and deceptive statements Defendants deploy in the promotion of their products.

b) Order Defendants to retract and correct their false and misleading advertising claims, including by means of a corrective advertising campaign with resources equal to or greater than the resources Defendants directed to their false and misleading advertising claims.

c) Require Defendants to:

(i) account for and pay over to Wahl all profits wrongfully derived by Defendants by their false and misleading representations and that such damages be trebled in accordance with 15 U.S.C. § 1117;

ii) pay to Wahl such damages as have been suffered by Wahl and that such damages be trebled in accordance with 15 U.S.C. § 1117;

iii) pay to Wahl the costs of this action, together with Wahl's reasonable attorneys' fees and disbursements in accordance with 15 U.S.C. § 1117 and 815 ILCS 505/10a(c); and

iv) file with this Court and serve on Wahl a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by the Court, in accordance with 15 U.S.C. § 1116.

d) Grant Wahl such other and further relief as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Under Fed. R. Civ. P. 38(b), Wahl demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted,

LOEB & LOEB LLP

By:    */s/ Thomas P. Jirgal*
       Thomas P. Jirgal
       IL Bar No. 6291661
       321 North Clark Street, Suite 2300
       Chicago, Illinois 60610
       Telephone: (312) 464-3100
       Fax: (312) 464-3111
       tjirgal@loeb.com


       Sarah Levitan Perry
       NY Bar No. 5221270
       (admitted *pro hac vice*)
       345 Park Avenue
       New York, New York 10154
       Telephone: (212) 407-4000
       sperry@loeb.com

       *Attorneys for Plaintiff*
       *Wahl Clipper Corp.*